# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 01-20249
Summary Calendar

---

GEOSOUTHERN ENERGY CORP.,

Plaintiff-Counter Defendant-Appellant,

and

AMERICAN FLOURITE INC.,

Counter Defendant-Appellant,

versus

CHESAPEAKE OPERATING INC.,

Defendant-Counter Claimant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

December 13, 2001

Before POLITZ, SMITH and BARKSDALE, Circuit Judges:

POLITZ, Circuit Judge:

GeoSouthern Energy Corporation appeals an adverse summary judgment

denying its claim for reformation of a joint development agreement related to certain oil and gas leases, and granting declaratory and other relief to Chesapeake Operating, Inc. We affirm.

## BACKGROUND

In 1991, Chesapeake, GeoSouthern, and American Fluorite, Inc.,[1] entered into a Joint Development Agreement under which Chesapeake was to drill oil and gas wells on mineral leases owned by GeoSouthern. The parties engaged in extensive negotiations and revisions of this 1991 Agreement. Chesapeake was represented by an attorney throughout the negotiations; GeoSouthern was represented by its president, acting without the assistance of counsel.

Under the 1991 Agreement, certain oil and gas Properties listed in the agreement were to be made available for development. Land selected from the Properties for proposed wells was referred to in the 1991 Agreement as a Horizontal Prospect. If one of the parties to the agreement proposed developing all or part of an included Property, the other party could then elect to participate. Under the terms of the 1991 Agreement, GeoSouthern, as owner of the Properties,

[1] Fluorite is an affiliate of GeoSouthern, appointed by GeoSouthern as its agent and attorney-in-fact under the 1991 Agreement. Although Fluorite is joined as a Cross-Appellee, GeoSouthern and Fluorite will be collectively referred to herein as GeoSouthern.

would assign a working interest in the Horizontal Prospect to Chesapeake. Thereafter, if the well on the Horizontal Prospect became noncommercial for sixty days or more, GeoSouthern had a right under the 1991 Agreement and assignments to compel reassignment of Chesapeake's rights.

Most of the Horizontal Prospects encompassed approximately 160 acres, however, two units were significantly larger. The parties agreed that these two units, Abbie 1-H (Abbie Well) and Neidra 1-H (Neidra Well), would be assigned to Chesapeake with GeoSouthern retaining the right to reassignment of the excess acreage.

In 1993 the parties amended the 1991 Agreement and entered into a separate Joint Development Agreement with Union Pacific Resources Corporation. The 1993 Agreement covered several, but not all, of the properties included in the 1991 Agreement. While the 1991 Agreement applied only to listed Properties, the 1993 Agreement applied to a "Joint Development Area" defined geographically on a map. Upon execution of the 1993 Agreement, the 1991 Agreement was suspended as to Properties located within the Joint Development Area during the term of the 1993 Agreement,[2] and was terminated as to Properties outside the Joint Development Area unless they were listed in Schedule F of the 1993 Agreement.

---

[2] The 1993 Agreement expired at least by December 31, 1995.

Three separate disputes later arose. The first dispute concerns the Victoria OL No. 1 Well. GeoSouthern proposed the Victoria Well as a Horizontal Prospect. Nineteen days after GeoSouthern notified Chesapeake of its designation of the Victoria Well as a Horizontal Prospect, Chesapeake elected to participate. GeoSouthern denied participation, claiming that Chesapeake's election was untimely. The 1991 Agreement provides that after receiving notice of designation by GeoSouthern Chesapeake must notify GeoSouthern of its election to participate "in writing . . . not less than fifteen (15) days after receipt of such notice." GeoSouthern claims that the parties intended that the election was to be made within fifteen days after receipt of notice, despite the literal language of the contract, and sought reformation of the contract. Chesapeake asserts that the literal language of the 1991 Agreement expressed the mutual intent of the parties. The district court granted Chesapeake's motion for summary judgment, holding that Chesapeake's response was timely and entitled Chesapeake to an interest in the Victoria Well, and entered a further declaratory judgment that GeoSouthern was not entitled to reformation.

The second dispute arises from the Brangus 1-H Well. Following the initial assignment, this well became noncommercial for at least sixty days and GeoSouthern compelled reassignment of Chesapeake's interest under the terms of

4

the 1991 Agreement. GeoSouthern later developed a new well, Brangus No. 1-RE, which included the acreage from the earlier Brangus Well, plus additional acreage. Chesapeake claims it is entitled to participate in the second Brangus Well on a reduced percentage basis on the theory that the underlying leases it reassigned to GeoSouthern are still Properties under the 1991 Agreement. The district court granted Chesapeake's motion for summary judgment, awarding it a proportional interest in the second Brangus Well, as well as in "other wells which were the result of Horizontal Prospects under the 1991 [Agreement] and were reassigned to GeoSouthern in accordance with the provisions in the 1991 [Agreement] regarding wells which were noncommercial for at least sixty days."

The third dispute involves the Abbie Well and Neidra Well. The excess acreage from these wells was reassigned to GeoSouthern. Subsequently, GeoSouthern used acreage from these units to create a new well, the Helene No. 1-RE Well. Chesapeake claims it is entitled to participate in the Helene Well on a reduced percentage basis on the grounds that it is comprised of portions of the Abbie Well and Neidra Well. The district court granted Chesapeake's motion for summary judgment awarding it a prorated interest in the Helene Well.

**ANALYSIS**

I.    Summary Judgment Standard:

5

We review the district court's grant of summary judgment de novo.[3] Summary judgment is proper when there is no genuine issue as to any material fact.[4] A factual issue is material if its resolution could affect the outcome of the action.[5] In determining whether there is a genuine issue as to any material fact, all justifiable inferences will be made in the nonmoving party's favor, and we will "not weigh the evidence or evaluate the credibility of witnesses . . . ."[6] A "dispute about a material fact is 'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7] Therefore, summary judgment is appropriate if the nonmovant fails to establish facts supporting an essential element of his *prima facie* claim.[8]

GeoSouthern complains that the district court applied the incorrect standard for summary judgment herein. After discussing the traditional standard, the trial court noted our articulation of the summary judgment standard applicable to those issues which are to be decided by the court in a nonjury trial. We observed in Nunez v.

---

[3] Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[4] FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[6] Id.

[7] Id.

[8] Celotex Corp., 477 U.S. at 322-23.

Superior Oil Co.,[9] that when "the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions."[10] In a nonjury trial, the judge is the ultimate trier of fact, and properly exercises judicial discretion by drawing inferences from evidence without resort to trial in instances such as are herein presented.

II.     GeoSouthern's Reformation Claim:

Paragraph 3.2 of the 1991 Agreement provides that GeoSouthern must advise Chesapeake in writing that it proposes to drill on a Horizontal Prospect, and Chesapeake must notify GeoSouthern of its intent to participate "in writing . . . not less than fifteen (15) days after receipt of such notice."

In October, 1997, GeoSouthern gave Chesapeake notice of a proposal to drill the Victoria Well. Nineteen days later, Chesapeake gave GeoSouthern written notice of its election to participate in the well. GeoSouthern concedes that Chesapeake's election was timely under the literal words of the 1991 agreement, but maintains that the language of the 1991 Agreement was the result of mutual mistake. GeoSouthern seeks reformation of the 1991 Agreement and a declaratory judgment that Chesapeake's response was untimely under the reformed time

---

[9]  572 F.2d 1119 (5th Cir. 1978).

[10]  Id. at 1124; see also In re Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991).

requirement. The district court refused to reform the 1991 Agreement and declared Chesapeake's response timely thereunder.

Generally, an unambiguous contract "must be enforced as written, looking at the objective intent as manifested by the language used, rather than interpreting it by attempting to divine the subjective intent of the parties."[11] To obtain reformation of a contract, a party must show that: (1) the parties reached an agreement on a material term, but (2) the written contract does not reflect the parties' agreement because of a mutual mistake.[12] The party seeking reformation has the burden of proving mutual mistake,[13] and must prove the facts and circumstances warranting reformation by clear and convincing evidence.[14]

In the present action, there is no dispute that Chesapeake's attorney inserted the "no less than fifteen days" language into an early draft of the 1991 Agreement. The 1991 Agreement was thereafter subject to extensive revision and negotiations. There is no evidence whatsoever that the parties agreed, prior to executing the 1991

---

[11] Sulzer Carbomedics v. Or. Cardio-Devices, Inc., 257 F.3d 449, 457 (5th Cir. 2001) (citing Sun Oil Co. v. Madeley, 626 S.W.2d 726, 731 (Tex. 1981)).

[12] Thalman v. Martin, 635 S.W.2d 411, 413 (Tex. 1982).

[13] Crockett v. Bell, 909 S.W.2d 70, 74 (Tex.App.–Houston [14th Dist.] 1995, no writ).

[14] Oldaker v. Traveler's Ins. Co., 497 S.W.2d 403, 404 (Tex.Civ.App.–El Paso 1973, no writ).

8

Agreement, that a response would be required within fifteen days, nor is there any evidence that Chesapeake understood the "no less than" language to require a response within fifteen days. Rather, GeoSouthern presented evidence that: (a) its president read and misunderstood the provision to require a response within fifteen days; (b) Chesapeake made subsequent requests that GeoSouthern respond within fifteen days; and (c) a 1997 letter from Chesapeake to GeoSouthern stating, "[i]n accordance with our Agreement, Chesapeake will make its election within fifteen days of receipt of such notice."

Examining the above evidence, the district court concluded that such evidence, if presented to the court in a bench trial "would not cause the Court to find the 'no less than fifteen days' provision in the 1991 [Agreement] was the result of a mutual mistake." We are compelled to agree. GeoSouthern has failed to demonstrate a genuine issue of material fact. The above evidence is not subject to factual dispute nor could it be shaped by issues of credibility. The terms of the contract are unambiguous.[15] Our review of the record, parties' briefs, and legal authority, persuades that the trial court properly granted summary judgment

---

[15] Reilly v. Ranger Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987) (holding that whether a contract is ambiguous is a question of law).

denying GeoSouthern's claim for reformation.[16]

III.     The Victoria Well:

As noted above, the district court properly denied GeoSouthern's demand for reformation.   Chesapeake properly responded no less than fifteen days after receiving notice from GeoSouthern and, as a result, is entitled to its percentage interest in the Victoria Well as declared by the district court.

IV.     The Helene No. 1-RE Well:

As noted above, the parties agreed that GeoSouthern would assign rights in the Abbie Well and Neidra Well to Chesapeake, but GeoSouthern retained the right to compel reassignment of Chesapeake's rights in the excess acreage.  The relevant provision declared that the "the reassignment of [Chesapeake's] . . . working interest will not reduce [Chesapeake's] (or its assigns) percentage interest in or production from any well, including increased production from subsequent operations."

GeoSouthern subsequently exercised its right of reassignment as to excess acreage in the two wells.   Chesapeake executed reassignments returning to GeoSouthern "all of [Chesapeake's] right, title and interest in and to the oil and gas

---

[16] Seymour v. Am. Engine Co., 956 S.W.2d 49, 58 (Tex.App.–Houston [14th Dist.] 1996, writ denied) ("A mistake by one party to an agreement, where it is not induced by the other party, will not be grounds for relief.").

leases." The reassignments are expressly made subject to the 1991 Agreement, and the initial assignments.

Summary judgment is proper in cases involving the interpretation of an unambiguous contract.[17] It is undisputed that the Helene Well contains acreage which was, in part, previously included in the Abbie Well and Neidra Well. The Abbie Well and Neidra Well are properties listed under the 1991 Agreement. The development of these wells originally was proposed by Chesapeake under the 1991 Agreement, as amended by the 1993 Amendment. The assignments from GeoSouthern to Chesapeake precluded any reassignment from reducing Chesapeake's percentage interest in subsequent operations of the wells. The reassignments returned to GeoSouthern all of Chesapeake's right, title and interest in the excess acreage, but expressly were made subject to the 1991 Agreement and assignments. The district court correctly determined that taken together these contracts unambiguously established that the Abbie Well and Neidra Well excess acreage remained Properties under the 1991 Agreement when reassigned to GeoSouthern.

GeoSouthern subsequently formed the Helene Well by combining the

_____

[17]   Hallmark v. Port/Cooper-T. Smith Stevedoring Co., 907 S.W.2d 586, 590 (Tex.App.–Corpus Christi 1995, no writ).

reassigned acreage with other acreage. Under the unambiguous terms of the contracts, GeoSouthern's subsequent operations on the Helene Well produced a new Horizontal Prospect in which Chesapeake had a right to notice and an opportunity to participate.

V.      The Brangus Well:

Paragraph 4.4 of the 1991 Agreement provides that GeoSouthern has a right "to receive a reassignment of all rights to a Horizontal Prospect . . . after the well on such Horizontal Prospect becomes noncommercial . . . for a period of sixty (60) consecutive days . . .." The assignment of the Brangus1 Well from GeoSouthern to Chesapeake included this right to compel reassignment.

Chesapeake was unambiguously provided with a right to participate in the Brangus1 Well, however, the well became noncommercial for the required period and GeoSouthern compelled reassignment. The reassignment was under the existing contractual arrangement. The 1991 Agreement unambiguously includes the Brangus1 Well, and the 1993 Amendment unambiguously provides that subsequent operations which amend the existing unit "will be a new Horizontal Prospect proposal."

The district court determined that when Chesapeake reassigned its rights and interest in the Brangus1 Well the land remained subject to the 1991 Agreement.

12

When GeoSouthern later selected that land for development it constituted a new Horizontal Prospect under the 1991 Agreement, to which Chesapeake was entitled to notice and an opportunity to participate. Our review of the record persuades that the district court correctly interpreted and applied the unambiguous contracts as they relate to the Brangus1 Well and Brangus2 Well.

The district court held that Chesapeake is entitled to notice and an opportunity to participate in other wells which GeoSouthern may propose for further development following a reassignment under paragraph 4.4. A close review of the record, and the district court's ruling, persuades that the trial court's order was sufficiently tailored to encompass only those future prospects as may necessarily fall within the purview of the unambiguous provisions of the existing agreements, amendments and assignments between the parties.

For these reasons, the judgment appealed is AFFIRMED.