Patricia SAPP and Pat
Sapp, Plaintiffs,

v.

MHI PARTNERSHIP, LTD. d/b/a
Plantation Homes, and McGuyer
Homebuilders, Inc., Defendants.

No. CIV.A.3:01CV284–M.

United States District Court,
N.D. Texas,
Dallas Division.

April 15, 2002.

Paula Fisette Sweeney, Howie & Sweeney, Dallas, TX, Kenneth D. Carden, Carden Law Office, Dallas, TX, for Plaintiffs.

Mark E. Stradley, George E. Crumley, Stradley & Wright, Dallas, TX, for Defendants.

### MEMORANDUM ORDER AND OPINION

LYNN, District Judge.

On February 11, 2002, both Plaintiffs and Defendants submitted Motions for Partial Summary Judgment, requesting this Court to grant summary judgment on Plaintiffs' Americans with Disabilities Act (ADA) and Texas Human Resources Code § 121 claims. Additionally, Defendants filed an Objection to Plaintiffs' Expert Witness and Motion to Strike on February 12, 2002. Having considered the Motions, the Court is of the opinion that it should GRANT Plaintiffs' Motion for Partial Summary Judgment and Defendants' Objection and Motion to Strike, and DENY Defendants' Motion for Partial Summary Judgment.

#### A. Background

This case arises from an incident that occurred on or about April 3, 1999 at a Plantation Homes housing development in Rowlett, Texas. On that date, husband and wife Patricia and Pat Sapp, who both have medical conditions necessitating the use of wheelchairs for mobility, visited the housing development to pick up floor plans for a home they were interested in having built. The plans, along with other sales information about the housing development, were located within a room in one of

the model homes at the development, which served as the office of a Plantation Homes sales associate. Before arriving at the model home to pick up the plans, Mrs. Sapp phoned the sales associate located within the home to ask if the home was wheelchair accessible. The associate reported that it was. Upon arriving at the home, however, the Sapps discovered that the walkway in front of the home had three steps leading up to the front door. The couple drove around to the back of the house to see if there existed an accessible route inside through the back door, but could not find one. After the couple drove the vehicle back around to the front of the house, Mrs. Sapp got out and proceeded to attempt to maneuver around the steps on the walkway to reach the front door.[1] She wheeled her chair off of the walkway and onto the lawn when she reached the steps, and pushed it back on the sidewalk above the location of the steps, managing to get to the front door using this circuitous route. Mrs. Sapp then met with the sales associate, received the floor plans, determined that no other accessible route existed that she could use to exit the building,[2] and proceeded to go back out the front door. As she had done before, Mrs. Sapp wheeled her chair onto the lawn to avoid the steps. This time, however, when Mrs. Sapp pushed the chair onto the grass, it hit an area of the ground that gave way, causing her left wheel to drop, and propelling Mrs. Sapp out of the chair and onto the concrete sidewalk in front of her. As a result, Mrs. Sapp allegedly sustained serious injuries to her shoulder and elbow,

which not only caused pain but also precluded her from engaging in activities she previously enjoyed.[3]

On February 15, 2001, the Sapps filed suit against Defendants, MHI Partnership, doing business as Plantation Homes, and McGuyer Homebuilders, the sole general partner of MHI. Plaintiffs allege that Defendants violated the ADA and Texas Human Resources Code § 121 by refusing to make the model home, which contained the sales associate's office, accessible to persons with disabilities, and that Defendants are also liable for bad faith, negligence per se, negligence, and loss of consortium. The parties both filed Motions for Partial Summary Judgment on the ADA and Texas Human Resources Code claims, and Defendants filed an Objection to one of Plaintiffs' experts, Ms. Kristi J. Thomas, whose deposition testimony Plaintiffs presented in connection with their summary judgment motion.

## B. The Parties' Summary Judgment Motions

### 1. Summary Judgment Standard

A court may grant a motion for summary judgment when "there is no genuine issue as to any material fact." *GeoSouthern Energy Corp. v. Chesapeake Operating Inc.*, 274 F.3d 1017, 1020 (5th Cir. 2001). A factual issue is material when "its resolution could affect the outcome of the action," and a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a

---

1. Before Mrs. Sapp exited the vehicle and attempted to maneuver her way to the front door, the Sapps attempted to get the attention of the sales associate inside the home by honking their car horn, but the associate never came out of the house in response to the honking.

2. Steps were present outside the back door as well as the front.

3. These facts were gleaned from Mrs. Sapp's deposition testimony, which the Sapps presented along with their Motion for Summary Judgment. Defendants have presented no evidence to contradict the Sapps' version of events.

verdict for the nonmoving party." *Id.* (internal quotation marks omitted). In determining whether any genuine issue of material fact exists, a court must view the evidence presented in the light most favorable to the non-movant, and draw all reasonable inferences in the non-movant's favor. *Id.* If the moving party establishes that no genuine issues of material fact exist, "the burden shifts to the non[-]moving party to show that summary judgment is not appropriate." *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir.2001) (internal quotation marks omitted). To defeat a summary judgment motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

### 2. Plaintiffs' ADA Claim

Plaintiffs allege that Defendants violated the ADA by failing to design their sales representative's office, which was located within a model home, in accordance with applicable standards, so that the office would have been accessible to persons with disabilities. The Court concludes that Plaintiffs have established a prima facie case of discrimination under the ADA, which Defendants have not rebutted, and Plaintiffs are therefore entitled to summary judgment on that claim.[4]

In describing both the broad reach and important purpose of the ADA, the Supreme Court has explained:

Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals.... Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life."

*PGA Tour, Inc. v. Martin,* 532 U.S. 661, 674–75, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). The Supreme Court has characterized the ADA as having a "comprehensive character," as it forbids discrimination against the disabled in all major areas of public life, including employment, public services, and public accommodations. *Id.* at 675, 121 S.Ct. 1879.

Title III of the ADA prohibits any party "who owns, leases (or leases to), or operates a place of public accommodation" from denying disabled individuals "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). 42 U.S.C. § 12183(a)(1) specifies that one form of discrimination includes failing

to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

---

**4.** The Court notes that Defendants did not file a Response to Plaintiffs' Motion for Summary Judgment; however, because both parties' summary judgment motions concerned identical issues, the Court looked to Defendants' own Motion for guidance as to Defendants' arguments in opposition to Plaintiffs' Motion.

*Id.* Plaintiffs assert that Mrs. Sapp is a disabled individual under the ADA who was discriminated against at Defendants' model home, which Plaintiffs allege is a place of public accommodation, because the model home/sales office was not constructed so as to be accessible to Mrs. Sapp, who must use a wheelchair.

The Court finds that Plaintiffs have sufficiently demonstrated that (a) Mrs. Sapp is a disabled individual within the meaning of the ADA; (b) Defendants owned and operated the model home/sales office and failed to construct it so as to be accessible to Mrs. Sapp or other such disabled individuals; and (c) Defendants' model home/sales office is a place of public accommodation.

### a. Is Mrs. Sapp Disabled?

■ To be disabled under the ADA, a plaintiff must prove that he or she suffers from "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12101(2)(A). Plaintiffs have proffered evidence, in the form of Mrs. Sapp's deposition testimony, establishing that the lower part of Mrs. Sapp's body is partially paralyzed, substantially limiting Mrs. Sapp's ability to walk; in fact, Mrs. Sapp requires the aid of a wheelchair for mobility. *Cf. Martin,* 532 U.S. at 668, 121 S.Ct. 1879 (finding that the plaintiff was disabled under § 12101(2)(A) because he had a circulatory disorder that substantially limited his ability to walk). Defendants have proffered no controverting evidence that Mrs. Sapp is not disabled within the meaning of the ADA. Thus, the Court determines that Ms. Sapp is a disabled individual under § 12101(2)(A).

### b. Was Defendants' Model Home/ Sales Office Accessible to Mrs. Sapp?

■ Second, Plaintiffs have demonstrated that Defendants did not design the model homes/sales office so as to be readily accessible to and usable by disabled individuals such as Mrs. Sapp. Defendants do not dispute that the model home in question was built at least 30 months after July 26, 1990, and thus falls under the requirements of 42 U.S.C. § 12183(a)(1), which incorporates the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG). *See* ADAAG, 28 C.F.R. pt. 36, app. A § 4.3.2(1); 28 C.F.R. § 36.101 (explaining that Title III of the ADA "requires places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with the accessibility standards established by this part"). Plaintiffs assert that Defendants have violated § 4.3.2(1) of the ADAAG, which requires that "[a]t least one accessible route within the boundary of the site shall be provided from public transportation stops, accessible parking, and accessible passenger loading zones, and public streets or sidewalks to the accessible building entrance they serve." Plaintiffs have established that there are stairs leading from the sidewalk to the front entrance of the model home, and steps off of the back door, so that the home had no accessible entrances for persons in wheelchairs. Defendants have presented no arguments or evidence to the contrary, nor have they argued that placing a ramp or other similar device outside the front or back doors of the facility would have been "structurally impracticable." Thus, the Court finds that Defendants' facility, if a place of public accommodation, violates § 12183(a)(1).

### c. Was the Sales Office Within the Model Home a Place of Public Accommodation?

■ Plaintiffs claim that the sales office within the model home constituted a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C.

§ 12182(a). 42 U.S.C. § 12181(7) provides an exhaustive list of categories of places of public accommodation:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> *(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;*
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G) a terminal, depot, or other station used for specified public transportation;
>
> (H) a museum, library, gallery, or other place of public display or collection;
>
> (I) a park, zoo, amusement park, or other place of recreation;
>
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
>
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

*Id.* (emphasis added). Plaintiffs argue that because one room within the model home was being used as the sales representative's office, that part of the building was a "sales or rental establishment" within the meaning of § 12181(7)(E). Viewing the evidence in a light most favorable to Defendants, the Court finds that the model home was being used as a sales office at the time of the Sapps' visit, and therefore the home was a "sales or rental establishment" that constituted a place of public accommodation.

Plaintiffs have submitted evidence demonstrating that at least one room within the model home, at the time they visited it, was serving as the office of a Plantation Homes sales representative, in which the representative stored information about the home development site and met with potential home buyers so that the potential buyers could receive information on the development. Ms. Sapp testified that she visited the model home to retrieve from the sales representative floor plans for other styles of homes that could be built at the site. Because the sales representative at that development office at the model home in question, the Sapps were required to go to the model home to retrieve the plans. Defendants admit that the room was used as a sales and information office. In the Appendix to Defendants' Motion for Summary Judgment, Defendants include the affidavit of Denny Garrett, President of the Dallas Division of McGuyer Homebuilders. Mr. Garrett stated that, between August 1998 and November 1999, a Plantation sales representative used a room within the model home in question "for the purpose of storing information about the subdivision, and brochures and floor plans for available homes, as well as for meeting with or discussing various

matters with prospective homebuyers." Thus, the Court concludes that, because the evidence, viewed in a light most favorable to the nonmoving party, reveals that sales and informational activities took place in the room, that part of the home constitutes a place of public accommodation under the ADA.

Defendants dispute this conclusion, arguing that (a) the model home, as a product offered for sale by Defendants, is not considered a public accommodation under Fifth Circuit precedent; (b) acting as a sales office was not the home's "ultimate purpose," which was instead to be a model home and, eventually, a private residence; (c) the room within the home could not be considered a sales office because the office was "not the place where the transaction of sale of Defendants' homes [the closings] took place;" and (d) although a sales representative had an office inside the home, and prospective buyers could meet with the representative at his office inside the home to inquire about buying a home in the development, "[c]oming to this particular model was not the only way for the Sapps to find information about the homes available in the subdivision." The Court finds none of these arguments availing.

Defendants first contend that under *McNeil v. Time Insurance Co.*, 205 F.3d 179, 186–188 (5th Cir.2000), which held that a business is not required under the ADA to alter or modify the product it offers for sale, Defendants need not have made the model home accessible to the disabled because it was simply Defendants' product. Defendants misapprehend the effect of *McNeil*'s holding on the case at hand. *McNeil* dealt with the issue of whether an insurance company could restrict the amount of coverage it gave to insured individuals afflicted with AIDS. *Id.* at 185–88. The plaintiff, Mr. McNeil, took out a health care policy from Time Insurance Company in the Spring of 1994. *Id.*

at 182. A few months later, he learned that he was suffering from AIDS. *Id.* The terms of the policy limited coverage for AIDS-related treatment to $10,000 during the first two years after an insured purchased the policy. *Id.* McNeil died before the first two years of coverage were up, and incurred a total of $400,000 in medical bills, only $10,000 of which was ever paid by Time. *Id.* McNeil instituted suit before he died, alleging a variety of claims against Time, including one brought under the ADA. *Id.* His ADA claim was premised on McNeil's argument that Time's denial of coverage constituted a denial of the full and equal enjoyment of the goods offered by Time because of McNeil's sickness. *Id.* at 185. However, the Fifth Circuit found that the ADA only prohibited a party from denying a disabled person *physical* access to a place* of public accommodation, and held that "a business is not required to alter or modify the goods or services it offers" for sale or rent at the place of public accommodation. *Id.* at 185.

When applied to the case at hand, the *McNeil* court's holding exempts from the ADA model homes that act only as model homes, because the homes, in such an instance, are being used by the owners simply as examples of the goods they are offering for sale. However, *McNeil* at least implicitly instructs that when a model home is being used not just as an example of a good for sale, but also as a place at which potential buyers can receive information and meet with sales representatives about a party's goods, it is a place of public accommodation that, if ADA-noncompliant, causes disabled individuals to be denied access to those goods. As the *McNeil* court explained, "Title III prohibits the owner . . . from denying the disabled access to . . . the goods and services of a place of public accommodation." *Id.* at 186. Thus, *McNeil* actually weighs in favor of regarding Defendants' model

home/sales office as a place of public accommodation.

Defendants further assert that acting as a sales office was not the home's "ultimate purpose," which was instead to be a model home and, eventually, a private residence; because the use of the home as a sales office was incidental to the home's ultimate purpose, the facility was exempt from ADA requirements, and the Fair Housing Act (FHA), which prohibits discrimination in the leasing or buying of a residence, applied instead. However, Defendants have cited no law establishing that a facility's "ultimate purpose" is a criterion in determining whether it falls under the ADA. Second, Defendants are ignoring the indubitable truth that many places can have more than one purpose. Another Court within this District came to that very conclusion after being •confronted with the issue of whether a leasing office within an apartment building was subject to the ADA or the FHA. *No Barriers, Inc. v. BRH Texas GP, L.L.C.,* No. 3:01–CV–344–R, 2001 WL 896924 (N.D.Tex. Aug. 2, 2001) (Buchmeyer, J.). In *No Barriers,* the plaintiffs claimed that the defendants, owners of an apartment building, had violated the ADA by failing to provide wheelchair-accessible routes to the leasing office in the building. The defendants argued that the FHA, and not the ADA, applied to the entire structure. Finding that other courts have concluded that "residential accommodations exempt from Title III and public accommodations subject to Title III can exist within the same facility," the Court determined that the leasing office constituted a "retail establishment" within the meaning of 42 U.S.C. § 12181(7)(E), while the rest of the building was exempt from ADA requirements. *Id.* 2001 WL 896924 at *3. In a case even closer to the one at hand, another district court determined that a model unit within a condominium complex, when used as a sales or information office, constituted a place of public accommodation. *See Balt. Neighborhoods, Inc. v. Rommel Builders, Inc.,* 40 F.Supp.2d 700, 705–06 (D.Md.1999) ("[A] sales office[,] whether a model unit or not[,] must be accessible to persons with disabilities . . . ."). *Id.* at 706.

Moreover, the Department of Justice, the agency designated to implement the public accommodation provisions of Title III, issued a Technical Assistance Manual that explicitly pronounces upon the issue of whether a model home comes within the purview of the ADA if it functions both as a model home and sales office. The Manual answers the question, "Are model homes places of public accommodation?" It states:

> Generally, no. A model home does not fall under one of the 12 categories of places of public accommodation. If, however, the sales office for a residential housing development were located in a model home, the area used for the sales office would be considered a place of public accommodation.

U.S. Dep't Of Justice, Civil Rights Division, The Americans With Disabilities Act: Title III Technical Assistance Manual § III–1.1000 (1993). Because the Department of Justice was delegated the duty "to render technical assistance explaining the responsibilities of covered individuals and institutions[,] . . . the Department's views are entitled to deference." *Bragdon v. Abbott,* 524 U.S. 624, 646, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). The Court finds that the Department of Justice's technical assistance on the issue of whether a model home is a place of public accommodation is congruent with the broad purpose of the ADA, and with the Fifth Circuit's interpretation of the ADA as providing disabled individuals with availability to a seller's goods and services. Thus, the Court accepts the Department of Justice's statement on this matter, and concludes that if a model home, although usually just an

example of a good for sale and therefore not required to comply with ADAAG, is also used as a sales office, the part of the home used as a sales office is subject to ADA requirements.

Defendants next contend that the home is not a place of public accommodation because no sales were actually completed at the sales associate's office in the model home. Rather, closings took place at the Defendants' principal place of business, or at a lending institution or title company. The Court finds this argument inapposite, however, given that Mr. Garrett, President of the Dallas Division of McGuyer Homebuilders, admitted that between August 1998 and November 1999, a Plantation sales representative used a room within the model home to store information about the housing development and meet with prospective homebuyers. Although no sales were *completed* at that office, sales activities were certainly occurring within the home. The types of sales activities Mr. Garrett described are sufficient to categorize the sales representative's office within the model home as a place of public accommodation, as it was a place at which Defendants' employees were attempting to sell Defendants' goods.

Defendants last assert that they are not in violation of the ADA because Defendants had other sales office locations around the city which were ADA-accessible, and because the sales representative could have met Plaintiffs outside of the model home to give them the floor plans and answer their questions. Defendants seem to be putting forth a variation on the separate-but-equal approach not viable since *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The ADA does not simply require that some of Defendants' sales offices be accessible to persons in wheelchairs; it requires that *all* of them be so accessible. The

Court rejects this argument, as well as Defendants' other objections, and finds that Plaintiffs are entitled to summary judgment on the issue of whether Defendants violated the ADA. Therefore, Defendants' Motion for Summary Judgment on the ADA claim, which was premised on Defendants' argument that no part of the model home can be considered a place of public accommodation, is denied.

### 3. Plaintiffs' Texas Human Resources Code Claim

Plaintiffs next seek summary judgment on their Texas Human Resources Code § 121 claim. *See* Tex. Human Resources Code Ann. § 121 (Vernon 2001). Section 121.003 provides that physically disabled individuals "have the same right as the able-bodied to the full use and enjoyment of any public facility in the state" and may not "be denied admittance to any public facility in the state because of the person's disability." *Id.* § 121.003(a), (c). A disabled person is one "who has a mental or physical disability, including mental retardation, hearing impairment, deafness, speech impairment, visual impairment, or any health impairment that requires special ambulatory devices or services." *Id.* § 121.002(4). A public facility includes

a building to which the general public is invited; a college dormitory or other educational facility; a restaurant or other place where food is offered for sale to the public; and any other place of public accommodation, amusement, convenience, or resort to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited.

*Id.* § 121.002(5). Section 121.003(d) provides that "the discrimination prohibited by this section includes ... a failure to ... (1) comply with Article 9102, Revised Statutes." *Id.*[5] The Texas Accessibility Stan-

---

**5.** Any violation of § 121.003 by a "person,

firm, association, corporation, or other orga-

dards (TAS), promulgated under Article 9102 (the Texas Architectural Barriers Act), consists of a set of technical requirements, much like the ADAAG, that must be met in the construction of such facilities. TEX. REV. CIV. STAT. ANN. art. 9102 (Vernon 2001). Section 4.3.2(1) of the TAS provides, in language identical to § 4.3.2(1) of the ADAAG, that "[a]t least one accessible route within the boundary of the site shall be provided from public transportation stops, accessible parking and accessible passenger loading zones, and public streets or sidewalks to the accessible building entrance they serve."

Plaintiffs argue the Defendants' model home was a public facility to which Mrs. Sapp was denied access because of Defendants' violation of § 4.3.2 of the TAS. The Court concurs. Mrs. Sapp is clearly a disabled person within the meaning of § 121.002(4). Furthermore, the representative's sales office within Defendants' model home was a public facility at the time Mrs. Sapp attempted to enter it, because prospective home buyers were invited into the office to retrieve information about the home development and meet with the sales representative.[6] Finally, because § 4.3.2(1) of the TAS is worded

---

nization" equates to a deprivation of the disabled person's civil liberties, and the disabled individual may "maintain a cause of action for damages in a court of competent jurisdiction." *Id.* § 121.004(b). If the plaintiff prevails on the suit, "there is a conclusive presumption of damages in the amount of at least $100." *Id.*

6. Relying on § 121.002, Defendants assert that because the model home was built with the intention that it be used as a housing accommodation, it is not a public facility. Section 121.002 defines "housing accommodations" as "all or part of real property that is used or occupied or is intended, arranged, or designed to be used or occupied as the home, residence, or sleeping place of one or more human beings, except a single-family residence whose occupants rent, lease, or furnish for compensation only one room." The Court finds, however, that the model home in question does not fall under this definition, as the Court reads the above definition to include only those places intended, arranged, or designed to be used *exclusively* as a home, residence, or sleeping place. Although parts of the model home in question were intended, arranged, and designed to be used exclusively as a home, residence, or sleeping place, the room that was used as the sales representative's office clearly was not. Additionally, even if the Court construed the definition of "housing accommodations" to include the entirety of Defendants' model home, that alone would not exempt the sales office within the home from the public facility requirements of § 121, because nothing in that section pro-

vides that a housing accommodation cannot also be a public facility.

More importantly, it is not entirely clear that a building need be a "public facility" in order to invoke the provisions of § 121.003(d) of the Human Resources Code. Although § 121.003 includes several references to "public facilities," that section also provides that discrimination includes failing to comply with Article 9102, and Article 9102(a) states that it applies, *inter alia*, to any "privately funded building or facility defined as a 'public accommodation'" under the ADA, making no mention of whether Article 9102 also applies to buildings classified as "public facilities." TEX. REV. CIV. STAT. ANN. art. 9102(a); *see also* 16 TEX. ADMIN. CODE tit. 16, § 68.20(c) (2002) (providing that the same entities listed as places of public accommodation under the ADA, including "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," are subject to compliance with the Texas Accessibility Standards, and not mentioning "public facilities"). Thus, the Court finds that Plaintiffs are not required to prove that the sales office within Defendants' model home was a public facility in order to establish violations of Article 9102 and § 121.003(d), because the Court has already found that the sales office was a place of public accommodation under the ADA, which is apparently all that is required for application of Article 9102 and the Texas Accessibility Standards. However, the Court also concludes that the sales office within the model home was a public facility under § 121. *See supra* p. 14.

identically to § 4.3.2(1) of the ADAAG, the Court's above finding that Defendants violated that provision of the ADAAG warrants this Court's conclusion that Defendants also violated the identical provision of the TAS. For these reasons, the Court grants Plaintiffs' Motion for Summary Judgment on the Texas Human Resources Code claim. The Court DENIES Defendants' Motion for Summary Judgment on the claim.

## C. Defendants' Objection to Plaintiffs' Expert Witness

In conjunction with their Motion for Summary Judgment, Defendants filed an Objection to Plaintiffs' designation of Kristi J. Thomas as an expert witness on accessibility issues. Defendants object to Ms. Thomas's proffering of her opinion on any issues of law. Ms. Thomas is the president and principal consultant of Accessology, Inc., a Texas company that assists both governmental and private entities in complying with disability-related laws. Portions of Ms. Thomas's deposition testimony, proffered by Plaintiffs in support of their Motion for Summary Judgment, and Ms. Thomas's expert report, provided to the Court by Defendants in support of their Objection to Ms. Thomas, contain a legal opinion as to whether Defendants violated the ADA and § 121 of the Texas Human Resources Code.[7] The Federal Rules do not permit expert witnesses to offer legal conclusions. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir.2001). The Court there-fore finds that those portions of Ms. Thomas's deposition and expert report that contain such legal conclusions should be stricken.[8]

## D. Conclusion

The Court GRANTS Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Strike, but DENIES Defendants' Motion for Summary Judgment. Although the Court has found that Defendants violated both the ADA and § 121 of the Texas Human Resources Code, it requires supplemental arguments from the parties as to the type of relief to which Plaintiffs are entitled on these claims.[9] Plaintiffs are ordered to submit, by April 26, 2002, a brief of not more than ten pages, setting out the type of relief they are requesting on these claims. By May 6, 2002, Defendants must submit a Reply of the same length.

SO ORDERED.

---

7. For example, Ms. Thomas's expert report explains: "[I]t is my opinion that Defendants have failed to design and construct facilities that are readily accessible to and usable by individuals with disabilities ... and have failed to comply with the ADA Accessibility Guidelines ... and the Texas Accessibility Standards ...." Expert Report at 1.

8. In reaching a determination as to the parties' summary judgment motions, the Court did not consider the portions of Ms. Thomas's deposition Plaintiffs proffered in support of their Motion for Summary Judgment.

9. One type of relief Plaintiffs expressly requested in their Complaint-that the Court require Defendants to make the model home accessible to persons with disabilities-is apparently impossible, as Defendants represent that the home is now a private residence.