John EDWARDS, et al., Plaintiff,

v.

TEXAS–NEW MEXICO POWER COMPANY, et al., Defendants.

Nos. 4:02–CV–430–A, 4:02–CV–431–A.

United States District Court, N.D. Texas, Fort Worth Division.

April 28, 2003.

---

Richard Witte Alexander, Cantey & Hanger, Austin, TX, Harry E. Bartel, Donald K. Buckman, Evelyn Ruth Leopold, John C. Stewart, Cantey & Hanger, Fort Worth, TX, for plaintiffs.

Christopher Edward Howe, Henry H. Robinson, Kelly Hart & Hallman, Fort Worth, TX, for defendant.

*MEMORANDUM OPINION*
and *ORDER*

McBRYDE, District Judge.

Came on for consideration the motion of defendants Texas–New Mexico Power Company ("TNPC"), Texas–New Mexico Power Company Flexible Benefits Plan, Texas–New Mexico Power Company Thrift Plan, Texas–New Mexico Power Company Retiree Health Plan, Texas–New Mexico Power Company Pension Plan, and Texas–New Mexico Power Company Excess Benefit Plan (collectively "defendants") for partial summary judgment. The court, having considered the motion, the response of plaintiffs, John Edwards ("Edwards") and Ralph Johnson ("Johnson"), the record, and applicable authorities, makes the following determination.

## I.

### *Plaintiffs' Claims*

On May 3, 2002, actions filed separately by Edwards and Johnson in state court were removed to this court. The action against Edwards was put on the undersigned's docket; and, the action filed by Johnson was transferred to the docket of the undersigned, who then consolidated the actions. By order signed September 24, 2002, the court granted plaintiffs leave to file a joint amended complaint setting forth all of their claims. After such complaint was filed, TNPC filed a motion to dismiss. By order signed November 20, 2002, the court denied the motion and gave plaintiffs an opportunity to replead. On December 2, 2002, plaintiffs filed their second amended complaint. TNPC then filed a motion to dismiss plaintiffs' state court claims and to strike jury demand, to which plaintiffs failed to respond, apparently acquiescing in the contention that all non-ERISA claims were preempted. Accordingly, by order signed January 7, 2003, the court granted the motion in part, dismissing with prejudice plaintiffs' state law claims on the basis of ERISA preemption. The judgment was made final and no appeal has been pursued.

The sole remaining claims are those asserted by plaintiffs under ERISA for benefits alleged to be due (1) under certain agreements between plaintiffs, respectively, on the one hand, and TNPC, on the other, for severance compensation upon change in control (the "revised severance agreements"); (2) under the TNPC Excess Benefit Plan; (3) under the TNPC Pension Plan; (4) under the TNPC Retiree Health Plan; (5) as a result of the failure of TNPC to provide them information required by 29 U.S.C. § 1132(c)(3) to be provided; and (6) to Edwards as a result of a payment error.[1]

## II.

### *The Motion for Partial Summary Judgment*

Defendants seek judgment on all but one of plaintiffs' claims. (They do not address the claim for attorneys' fees under § 12 of the revised severance agreements.) They maintain that all of the claims addressed must be dismissed as frivolous.

## III.

### *Plaintiffs' Motion to Strike Objectionable Summary Judgment Evidence*

■ Plaintiffs have filed a motion to strike portions of affidavits submitted by defendants in support of their motion for partial summary judgment. The court, in accordance with its usual practice, is denying the motion. The court will give the summary judgment evidence whatever weight it may deserve.

## IV.

### *Viability of Plaintiffs' Claims*

A. *Claims Under the Revised Severance Agreements.*

1. *Section 5)(b).*

Section 5)(b) of the revised severance agreements provides that plaintiffs are entitled to receive:

(b) incentive compensation under the Company's several incentive compensation plans in existence immediately prior to the Change in Control for which Executive has been granted an award and to the extent an agreement exists be-

---

1. The court notes that plaintiffs are now saying that all of their claims are being asserted under the revised severance agreements, *see* Pls.' Summ. J. Resp.; Pls.' Am. Mem. at 13–23, apparently hoping to recover all of the attorneys' fees incurred by them in pursuing this action and to gain *de novo* review of the administrative handling of all claims.

tween Executive and the Company addressing a Change in Control, such agreement shall control the manner and amount of payment, otherwise payments of incentive compensation shall be determined as if the goals required to be met for payment had been attained at target and shall be made in the same manner as payments under paragraph 5)(a) above[.]

Plaintiffs assert two claims under § 5)(b) of the revised severance agreements, one under the "Broad Base Incentive Plan" (the "short-term plan") and one under the "Long–Term Incentive Plan." Pls.' 2d Am. Compl. ¶ 20. Plaintiffs allege that the "compensation" used to determine their benefits under each plan should have included their total compensation reflected on their W–2's for the calendar year 2000. *Id.* In sum, they contend that post-discharge severance payments should have been included when the calculations were made.

■ The short-term plan provides that the award will be based on "year-end W–2 earnings including IRS Section 125 and 401–K salary deferrals (actual hours paid excluding non-cash items and bonuses)." Defs.' App. at 119. Defendants urge that "earnings" must mean "base pay," because of the parenthetical reference to "actual hours paid." Defs.' Br. at 2. However, the language says what it says: "year-end W–2 earnings." Whatever that figure might be (and plaintiffs present no summary judgment evidence to establish it), it should have been used to calculate the benefit due.[2]

Defendants contend that, to the extent plaintiffs seek additional compensation pursuant to the 401–K incentive opportunity provision of the short-term plan, Defs.' App. at 120, such claim is without merit. The incentive matching opportunity depends on the employee's basic salary deferral into the 401–K thrift plan, which specifically provides that compensation excludes "all other pay in excess of regular basic wage or salary." Defs.' App. at 137. The definition could not be more clear. Plaintiffs presumably have abandoned this claim, not having addressed it in either their summary judgment response or brief. Therefore, defendants are entitled to judgment as to this claim.

Under this section of their brief, defendants also address the Equity Incentive Plan. This is apparently the "Long–Term Incentive Plan" referred to in the complaint at paragraph 20. Plaintiffs concede that they have no claim for additional benefits under such plan. Pls.' Resp. at 3.

### 2. *Section 5)(c).*

Section 5)(c) provides that plaintiffs are entitled to receive:

> (c) medical, dental, disability and life insurance and other employee benefits upon the same terms and conditions and at the same cost to the Executive that existed immediately prior to the Change in Control of the Company for the lesser of three years or until substantially similar employee benefits are available through other employment[.]

Under § 5)(c) of the revised severance agreements, plaintiffs first claim that they are entitled to receive group health and medical benefits. Second Am. Compl. ¶ 23(i). Defendants maintain that plaintiffs did not, in fact, lose any such benefits. Plaintiffs admit that such is the case. Pls.' Resp. at 3. Although they state that they intended for their claims to be based solely upon the Consolidated Omnibus Reconciliation Act,[3] they "do not wish to pursue" such claims. *Id.* at 4.

---

2. Although it might be true that the payment makes no sense in the context of the short-term plan, the payment should be evaluated in the light of the revised severance agreements.

3. No such claim could be discerned from paragraph 23(i) of the second amended complaint.

■ Plaintiffs' second and third claims under § 5)(c) are that they are each entitled to an automobile allowance and a financial planning allowance, since those were "other employee benefits" they each enjoyed before the change in control of TNPC. Pls.' 2d Am. Compl. ¶ 23(ii) & (iii). Defendants maintain that these allowances were executive perquisites that do not fall within the category of employee benefits. Under the interpretive canon of "ejusdem generis," a general word takes its character from the specific words with which it appears. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 114–15, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). That is, "the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* (citations omitted). Thus, the phrase "other employee benefits" is limited to those benefits similar to medical, dental, disability and life insurance, *i.e.,* benefits generally available to *all employees, see Canton Police Benevolent Ass'n v. United States,* 844 F.2d 1231, 1236 (6th Cir.1988), and does not include the automobile and financial planning allowances, which were available only to certain executives. Further, as defendants point out, other portions of the revised severance agreements substantiate the difference between pension and welfare benefits and financial planning and automobile allowances. Specifically, section 4)(ix) separates out the failure to provide an automobile, whereas section 4)(vi) refers to medical, dental, disability, and life insurance.

### 3. *Section 5)(d).*

Section 5)(d) provides that plaintiffs are entitled to receive:

(d) if the Executive is fifty years of age or older and has *at least fifteen years of service with the Company,* the Compa-

ny, in addition to the foregoing benefits, shall pay to the Executive, as a retirement supplement, an amount that is equal to what the Executive's retirement benefit would be, calculated using the applicable formula set forth in the Company's Pension Plan as supplemented by the Excess Benefit Plan; for the purposes of calculating the retirement benefit payable hereunder the following assumptions shall be used in conjunction with the applicable formula: 1. Compensation, as defined in the Pension Plan, shall include those amounts paid to the Executive in the twelve months immediately preceding the Change in Control Event; 2. Accrued Service Credits shall be determined as if the Executive continued employment until age 62; 3. The Interest Credit Rate for the purposes of calculating the Cash Balance account shall be the average of the four quarters immediately preceding the Change in Control Event; 4. The discount rate for the purposes of determining a lump sum distribution shall be as set forth in the Pension Plan; *provided that* to the extent that the Executive would be entitled to retire on the date of termination or upon his achieving an age upon which the Executive could retire pursuant to the Company's Pension Plan as supplemented by the Excess Benefit Plan, and receive payments pursuant to Pension Plan and Excess Benefit Plan, the Company's obligation shall be equal to the difference between the amount actually received by the Executive under the Pension Plan as supplemented by the Excess Benefit Plan and the amount required to be paid by the Company as set forth above; *provided further that* if the Executive becomes entitled to any of the benefits set forth in paragraph 5)(c) as a retiree under the Company's Pension Plan on or after the date of termination, then the benefits provided under

said Pension Plan and Excess Benefit Plan shall be substituted for and take the place of the benefits that the Company would otherwise be required to provide; and further provided that to the extent any payment or obligation to pay under this paragraph 5)(d) is determined by the Internal Revenue Service to be subject to taxation upon the net present value of the stream of payments for which the Company is obligated to pay, then the Company shall pay to the Executive within 30 days of such determination a lump sum equal to the amount determined by the Internal Revenue Service to be subject to taxation; *further, provided that* if the Executive has an employment agreement that provides for treatment of pension benefits, then the amount of the benefit payable hereunder shall include the terms of the employment agreement[.]

(emphasis added).

██ Plaintiffs allege that they are entitled to a retirement supplement as determined under § 5)(d) of the revised severance agreements as well as reimbursement for any income tax liability that results as a consequence of receiving the supplement. They say that either (1) they have met the age and length-of-service requirements of § 5)(d), Pls.' 2d Am. Compl., ¶ 26, or (2) those requirements are void because they violate the ERISA requirement for vesting of pension plan benefits, 29 U.S.C. §§ 1052(a) & 1053(a), Pls.' 2d Am. Compl., ¶¶ 27 & 28.

Defendants maintain that any contention that plaintiffs are entitled to anything more under § 5)(d) is frivolous and that plaintiffs have no evidence, or even a coherent argument, that they meet the unambiguous years-of-service requirement.[4] Plaintiffs, however, point to TNPC's 10K

filing with the Securities and Exchange Commission for the period ending December 31, 1999, that shows that Johnson has twenty-one years of credited service and Edwards, twenty-two. Thus, plaintiffs have at least raised a fact issue as to their right to benefits under § 5)(d).[5] And, their argument for credited years of service makes sense, because § 5)(d) would otherwise have no purpose since the term of the revised severance agreements was three years and plaintiffs were nowhere near retirement age when they each signed.

### 4. *Section 5)(f).*

Section 5)(f) provides that plaintiffs are entitled to receive:

> (f) any excise tax payable pursuant to Section 4999 of the Internal Revenue Code of 1986, as amended (the "Code"), as a result of the payment of the amounts described in this paragraph 5)[.]

Defendants' argument under § 5)(f) necessarily depends on plaintiffs' inability to recover under §§ 5)(a) through 5)(e). Defendants have failed to establish, however, that plaintiffs are entitled to no such recovery. Accordingly, plaintiffs' right to recover under § 5)(f) is not foreclosed at this time.

### B. *Claims Under the TNPC Excess Benefit and Pension Plans.*

1. In paragraph 51(i) of their second amended complaint, plaintiffs allege that they are due an excess thrift plan benefit. Defendants point out that plaintiffs admitted in deposition that they have no such claims. Plaintiffs do not discuss this ground of the motion in their summary

---

4. There is no contention that plaintiffs do not meet the age requirement.

5. The court need not reach plaintiffs' alternative contention.

judgment response, apparently conceding that they are not pursuing such claims.

██ 2. In paragraph 51(ii) and paragraph 52 of their second amended complaint, plaintiffs allege that defendants should have utilized all of their W–2 compensation for the year 2000 in calculating benefits under the excess benefit plan and pension plan. The abuse-of-discretion standard applies in determining whether the payments were properly calculated. *See Olander v. Bucyrus–Erie Co.*, 187 F.3d 599, 607–08 (7th Cir.1999).[6] Determination of benefits under the excess benefit plan, as supplemented by the supplemental employee retirement plan ("SERP"),[7] necessarily depended upon the underlying pension plan, which contained the relevant terms and definitions.[8] The pension plan also gave the plan administrator "complete and final discretionary authority to construe and interpret" the plan. Defs.' App. at 75. The pension plan defined the "considered period" that would count in determining compensation as "completed calendar years." *Id.* at 34. Accordingly, defendants' actuary did not consider partial year compensation, *i.e.*, the amount earned by plaintiffs in the partial year preceding their termination. And, he would not have used plaintiffs' W–2 compensation for the year 2000 in any event, since the pension plan excluded from the calculation extraordinary severance payments, special payments, and benefits provided under any employer-sponsored employee benefit programs. *Id.* Further, the actuary used the discount factor applicable to early (that is, pre-age 65) retirement under the pension plan. Defs.' App. at 571, 600–01). Thus, the record establishes that defendants followed the pension plan in calculating the benefits at issue. Plaintiffs have not raised a genuine fact issue as to any flawed calculations. Nor have they shown that a different calculation was mandated as a matter of law.

### C. Claims for Retiree Health Benefits.

██ In paragraph 53 of their second amended complaint, plaintiffs assert that they are entitled to benefits for life under the retiree health plan. Plaintiffs have not raised a genuine fact issue as to their status as "retirees." It is undisputed that plaintiffs were terminated as a result of a change in control. Pls.' 2d Am. Compl., ¶ 8. The court is not aware of plaintiffs ever having contended that they retired.

### D. ERISA Notice Claims.

In paragraph 54 of their second amended complaint, plaintiffs assert that defendants "were (and are) required to provide [them] with various required information" under ERISA. Plaintiffs do not identify any of the information they allege should have been provided. They have not attempted to raise, much less raised, a genuine fact issue as to whether any of the information to which they refer was not provided.

### E. Edwards's Additional Claim.

In paragraph 55 of the second amended complaint, plaintiff Edwards contends that he is entitled to an additional $77,707.00. Defendants have explained the reason for the apparent discrepancy and Edwards has no response. He has apparently abandoned this claim.

---

**6.** The court notes that the result would be the same even under *de novo* review.

**7.** The SERP is comprised of "supplement A," Defs.' App. at 113, and a so-called change in control supplement, *id.* at 114–15.

**8.** The SERP refers back to the excess benefit plan, Defs.' App. at 113, which refers back to the pension plan, *id.* at 108.

## V.

### ORDER

For the reasons discussed herein,

The court ORDERS that defendants' motion for partial summary judgment be, and is hereby, granted in part and plaintiffs' take nothing on their claims (a) under § 5) (b) of the revised severance agreements for additional compensation pursuant to the 401–K incentive opportunity provision of the short-term plan and for additional benefits under the equity incentive plan (referred to as the "Long–Term Incentive Plan" in plaintiffs' second amended complaint at paragraph 20); (b) for benefits under § 5) (c) of the revised severance agreements; (c) for benefits under the TNPC excess benefit plan (paragraph 51 of their second amended complaint); (d) for benefits under the TNPC pension plan (paragraph 52 of the second amended complaint); (e) for benefits under the TNPC retiree health plan (paragraph 53 of the second amended complaint); (f) for benefits as a result of the failure of TNPC to provide them information required by ERISA (paragraph 54 of the second amended complaint); and (g) for recovery by Edwards of an additional sum as a result of a payment error (paragraph 55 of the second amended complaint); and, the court further ORDERS that such claims be, and are hereby, dismissed with prejudice.

The court further ORDERS that the motion be, and is hereby, otherwise denied, and that plaintiffs' motion to strike be, and is hereby, denied.