**TAYLOR PIPELINE CONSTRUCTION, INC., Plaintiff,**

v.

**DIRECTIONAL ROAD BORING, INC., David J. O'Leary, Hypower, Inc., and P.D.G. Electric Company, Defendants.**

No. CIV.A. 1:04–CV–599.

United States District Court, E.D. Texas, Beaumont Division.

April 26, 2006.

Nancy Hesse Hamren of Coasts Rose Yale Ryman & Lee Houston, TX, for Hypower, Inc.

David E. Finck and Monica F. Oathout of Schwartz Junell Greenberg & Oathout, Houston, TX, for PDG Electric Company.

## MEMORANDUM AND ORDER

CRONE, District Judge.

Pending before the court are Defendant Hypower, Inc.'s ("Hypower") Motion for Summary Judgment (# 46) and Defendant P.D.G. Electric Company's ("P.D.G.") Motion for Summary Judgment (# 47). Defendants seek summary judgment on an action brought by Plaintiff Taylor Pipeline Construction, Inc. ("Taylor") for sworn account, conversion and negligence, *quantum meruit* and unjust enrichment, fraud, violation of the Texas Construction Trust Fund Act, and violation of the Prompt Pay Act. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment for both Defendants is warranted.

### I. *Background*

In a document dated May 1, 2002, the City of Houston announced its intention to award P.D.G., a Florida corporation with its principal place of business in Florida, a contract to perform construction and im-

provements at George Bush Intercontinental Airport ("IAH project") in Houston, Harris County, Texas. P.D.G. and the City of Houston later formalized their agreement in a written contract ("prime contract"). On May 15, 2002, P.D.G. entered into a teaming agreement with Hypower, a Nevada corporation with its principal place of business in Florida. The teaming agreement provided that "[f]rom time to time, both PDG and Hypower may obtain contracts from General Contractors, Agencies, FAA, or other customers and PDG or Hypower may choose to issue a subcontract to the other." P.D.G. and Hypower executed an addendum to the original teaming agreement on September 25, 2002, under which P.D.G. would act as general contractor and Hypower would serve as a subcontractor on the IAH project.

P.D.G. entered into other subcontracts pertaining to the IAH project, including an agreement with Directional Road Boring ("DRB"), signed December 9, 2002, to provide equipment and labor to install all bores. DRB is a Louisiana corporation with its principal place of business in Louisiana. Its president David J. O'Leary ("O'Leary") is a citizen and resident of the State of Louisiana. Prior to signing DRB's subcontract with P.D.G., O'Leary approached Taylor in Dayton, Liberty County, Texas, about performing work on the IAH project. Taylor is a Texas corporation with its principal place of business in Texas. Doug Taylor ("D. Taylor") is the owner of Taylor, Jimmy Taylor ("J. Taylor") serves as its president, and Julia Taylor ("Ms. Taylor") acts as its treasurer and secretary. O'Leary and Ms. Taylor, on behalf of J. Taylor, signed a contract ("sub-subcontract") dated November 22, 2002, listing DRB as contractor, Taylor as subcontractor, and Hypower as owner. According to this sub-subcontract, Taylor was responsible for installing telecommunications and electrical steel casing or conduit throughout the airport using the dry boring method of installation. Neither P.D.G. nor Hypower signed the subcontract between DRB and Taylor, entered into any negotiations with Taylor, or executed a separate contract with Taylor.

Plaintiff commenced work in December 2002. In his deposition, J. Taylor described the system governing requests for payment on the IAH project. Taylor was to submit its time and expenses to DRB. DRB, in turn, was to provide P.D.G. with its invoices. P.D.G. was then to give its billing statements to the City of Houston. Once P.D.G. received payment from the City, P.D.G. was to pay DRB. DRB, upon receiving payment from P.D.G., was to compensate Taylor. In accordance with this system, Plaintiff sent DRB several invoices for labor rendered, equipment rented, and materials furnished: (1) invoice # 1588, dated February 6, 2003, in the amount of $54,221.67; (2) invoice # 1699, dated March 19, 2003, in the amount of $36,986.31; and (3) invoice # 1742, dated April 7, 2003, in the amount of $8,739.90.

Although P.D.G. paid DRB for its work on the project, DRB failed to pay Taylor. Plaintiff claims it spoke with Mike Arroyo ("Arroyo"), a Hypower project manager, between ten and twelve times beginning in March 2003, about DRB's failure to pay Taylor's invoices. Taylor alleges Arroyo assured Plaintiff that DRB would be paid shortly and that Taylor, in turn, would receive its compensation. Plaintiff asserts it also discussed the nonpayment issue with a P.D.G. project manager Max Hurd ("Hurd") in May or June 2003. J. Taylor testified during his deposition, however, that he never sent any written correspondence to P.D.G. or Hypower alerting either company to the fact that DRB had failed to pay Taylor for its work on the IAH project. Even though Plaintiff had

not received payment from DRB, it continued its work on the project for some period of time. Finally, in April 2003, Plaintiff shut down operations and walked off the job.

As early as January or February 2003, Plaintiff learned that this public project was bonded. In June 2003, Taylor decided to make a claim against the bond due to DRB's failure to pay. It was not until October 6, 2003, however, that Taylor actually made the claim. The bond company responded to the claim by stating that it needed supporting documentation. While it remains unclear as to whether the supporting documentation was eventually forwarded by Taylor to the bond company, in the end, Taylor's claim was denied.

On April 7, 2004, Taylor filed suit against P.D.G., Hypower, DRB, and O'Leary in the 75th Judicial District Court of Liberty County, Texas, seeking to collect on its unpaid invoices. In August 2004, Plaintiff entered into a settlement agreement with DRB. According to the agreement, DRB was to pay $5,000.00 per month beginning September 15, 2004, and on the fifteenth day of each month. Upon timely payment of $75,000.00, the outstanding indebtedness was to be deemed paid in full. After providing Plaintiff with one check for $5,000.00, DRB failed to make any further installment payments.

On September 17, 2004, P.D.G., with the consent of Hypower, DRB, and O'Leary, removed the case to this court, on the basis of diversity jurisdiction under 28 U.S.C. § 1441. In its first amended petition, Plaintiff asserts an action for sworn account in addition to alleging claims for conversion and negligence, *quantum meruit* and unjust enrichment, fraud, violation of the Texas Construction Trust Fund Act, and violation of the Prompt Pay Act. P.D.G. and Hypower each filed an amended answer on April 1, 2005.

On July 25, 2005, Plaintiff filed a motion for entry of default and default judgment against DRB and O'Leary. This court held a show cause hearing on October 18, 2005. Neither DRB nor O'Leary appeared in court in person or through counsel to show cause why default should not be entered against them. Accordingly, the court granted a default judgment in favor of Taylor and against DRB and O'Leary on October 21, 2005, with final judgment to be entered at a later date pending disposition of the claims against P.D.G. and Hypower. On December 1, 2005, P.D.G. and Hypower filed the instant motions seeking summary judgment on the claims asserted by Taylor.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motions and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir.2006); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir.2005); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th

Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002).

"A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Cooper Tire & Rubber Co. v. Farese,* 423 F.3d 446, 454 (5th Cir.2005); *Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co.,* 438 F.3d 519, 523 (5th Cir.2006); *Cooper Tire & Rubber Co.,* 423 F.3d at 454; *Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving parties, however, need not negate the elements of the nonmovant's case. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322 n. 3, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(e)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Ra-* dio Corp., 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *EMCASCO Ins. Co.,* 438 F.3d at 523; *Smith ex rel. Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir.2004); *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir.2003); *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000). "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348); *see Riverwood Int'l Corp. v. Employers Ins. of Wausau,* 420 F.3d 378, 382 (5th Cir.2005). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996); *see Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Lincoln Gen. Ins. Co.,* 401 F.3d at 350; *Smith ex rel. Estate of Smith,* 391 F.3d at 624; *Malacara,* 353 F.3d at 398; *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir.2003); *Harken Exploration Co.,* 261 F.3d at 471; *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505); *Shields v. Twiss,* 389 F.3d 142, 150 (5th Cir.2004); *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (5th Cir. 2003); *Martinez,* 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir.), *cert. denied,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003);

Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir.2002). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir.1999); accord Boudreaux, 402 F.3d at 540; Little, 37 F.3d at 1075 (citing Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Furthermore, " 'only reasonable inferences can be drawn from the evidence in favor of the nonmoving party.' " Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting H.L. Hayden Co. of N. Y., Inc. v. Siemens Med. Sys., Inc., 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." Id. at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions," by speculation, by the mere existence of some alleged factual dispute, or "by only a scintilla of evidence." Little, 37 F.3d at 1075 (citations omitted); see Anderson, 477 U.S. at 247–48, 106 S.Ct. 2505; Warfield, 436 F.3d at 557; Boudreaux, 402 F.3d at 540; Wallace, 80 F.3d at 1047; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir.1996) (citing Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown, 337 F.3d at 541; see Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 332 (5th Cir.2004); Bridgmon v. Array Sys. Corp., 325 F.3d 572, 577 (5th Cir.2003); Hugh Symons Group, plc v. Motorola, Inc., 292 F.3d 466, 468 (5th Cir.), cert. denied, 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. See Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); Celotex Corp., 477 U.S. at 322, 106 S.Ct. 2548; EMCASCO Ins. Co., 438 F.3d at 523; Cutrera v. Board of Supervisors of La. State Univ., 429 F.3d 108, 110 (5th Cir. 2005); Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322–23, 106 S.Ct. 2548.

B. Evidentiary Objections

Evidence offered for or against summary judgment is "subject to the same standards and rules that govern the admissibility of evidence at trial." Rushing, 185 F.3d at 504 (citing Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 650 n. 3 (5th Cir.1992); Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 175–76 (5th Cir.1990), cert. denied, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993)); accord Bain v. Honeywell Int'l, Inc., 257 F.Supp.2d 879, 881–82 (E.D.Tex. 2003). In their respective replies, P.D.G. and Hypower object generally to the evidence Taylor submits with its summary judgment response. The court will consider these disputed exhibits only to the extent they are relevant, properly authenticated, do not contain hearsay, or fall within an exception to the hearsay rule.

■ Hypower's objections under the optional completeness rule cannot succeed in

light of its failure to pursue the proper remedy. Rule 106 of the Federal Rules of Evidence states that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." FED. R. EVID. 106; *see Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 171–72, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988); *Flores v. Cameron County,* 92 F.3d 258, 273 n. 12 (5th Cir.1996). While Hypower objects to Plaintiff's submission of the exhibit bearing bates-stamp PDG/TP 007023 (Exhibit E–29), a portion of an e-mail, as being incomplete, it does not attempt to introduce any missing pages that it asserts the court is required to consider for the sake of fairness. Accordingly, Hypower's objection must fail.

■■■ P.D.G. and Hypower also challenge Taylor's proffered expert Tom Neild ("Neild"), arguing that Neild is not a qualified expert and that his opinions do not constitute proper expert testimony. The admission or exclusion of expert witness testimony is a matter that is left to the discretion of the district court. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Stolt Achievement, Ltd. v. Dredge B.E. LINDHOLM,* 447 F.3d 360, 366–67 (5th Cir.2006); *United States v. Hicks,* 389 F.3d 514, 524 (5th Cir.2004), *cert. denied,* —— U.S. ——, 126 S.Ct. 1022, 163 L.Ed.2d 853 (2006). Pursuant to Rule 702 of the Federal Rules of Evidence:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702; *accord Kumho Tire Co.,* 526 U.S. at 152, 119 S.Ct. 1167; *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Prior to admitting expert testimony, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir.1999); *accord* FED. R. EVID. 702; *Elder v. Tanner,* 205 F.R.D. 190, 193 (E.D.Tex.2001). Accordingly, "'[t]o qualify as an expert, "the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."'" *Hicks,* 389 F.3d at 524 (quoting *United States v. Bourgeois,* 950 F.2d 980, 987 (5th Cir.1992) (quoting *United States v. Johnson,* 575 F.2d 1347, 1361 (5th Cir. 1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979))).

■■■ Neild, the individual proffered as an expert by Plaintiff in this case, has been in the construction business since 1973. Throughout this span of time, Neild has acted as a general contractor, a subcontractor, and a construction manager working on commercial, residential, and public works projects. He is a member of the Association of General Contractors ("Association") as well as the Beaumont ISD Construction Renovation and Maintenance Committee. In addition to having completed two years of college, Neild participates in continuing construction education classes through the Association and seminars offered by the Concrete Institute of America and Windstorm Certification. Neild has served as an expert witness on

three separate occasions. In each of these prior cases, Neild testified about the quality of the construction at issue in the lawsuit. As Neild conceded during deposition, however, the instant action is the first time he has been asked to provide expert testimony regarding the contractual and/or common law duties between parties involved in a construction dispute. Neild has not authored any publications or given any speeches involving construction law topics. While Neild has attended four, two-day construction law seminars over the course of his career, he has not gained certification or licensure in any area of construction law. The Fifth Circuit has held that "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson*, 163 F.3d at 937; *Elder*, 205 F.R.D. at 193. Accordingly, while Neild's ability to testify as to the quality or methods of construction is undisputed, the court finds that Neild is not qualified to render an opinion regarding the obligations of parties to construction contracts or other areas of construction law because he does not have experience, training, or education in this discrete area of the industry. *See Wilson*, 163 F.3d at 937; *Sullivan v. Rowan Cos.*, 952 F.2d 141, 145–46 (5th Cir.1992).

■ Even if Neild qualified as an expert in this case, the opinions propounded by him are not the proper subject for expert testimony to the extent that they amount to conclusions of law. *See C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir.2001). While expert witnesses are given wide latitude, including the ability to offer opinions that are not based on firsthand knowledge or observation, this freedom is not limitless. *See Kumho Tire Co.*, 526 U.S. at 148, 119 S.Ct. 1167; *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. Neither Rule 702 nor 704(a) of the Federal Rules of Evidence permits expert witnesses to offer legal opinions. *See* FED. R. EVID. 702, 704(a); *C.P. Interests, Inc.*, 238 F.3d at 697; *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983); *Sapp v. MHI P'ship, Ltd.*, 199 F.Supp.2d 578, 589 (N.D.Tex.2002). In Neild's affidavit, he opines as to the duties P.D.G. and Hypower owed Taylor and their fulfillment of those duties. Neild concludes that Defendants breached a duty to ensure Plaintiff was compensated for its work on the project by failing to withhold payments to DRB or issue two-party checks to DRB and Taylor once they learned DRB was not paying Taylor. "[A]llowing an expert to give his opinion on the legal conclusion[s] to be drawn from the evidence both invades the court's province and is irrelevant." *Owen*, 698 F.2d at 240. Moreover, expert testimony expounding upon what the law requires is "unnecessary and improper." *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F.Supp.2d 529, 545–46 (S.D.Tex. 2006); *see Owen*, 698 F.2d at 239–40. Therefore, the court finds that those portions of Neild's deposition testimony and affidavit that contain legal conclusions constitute inadmissible summary judgment evidence which will not be considered. *See Sapp*, 199 F.Supp.2d at 589.

C. *Abandonment of Claims*

In its response to Defendants' motions for summary judgment, Taylor does not address its causes of action for fraud or sworn account and, therefore, is deemed to have abandoned them. Because Plaintiff did not brief, or even raise, these issues in its responsive brief, any claims by Taylor relying on these theories have been waived and are no longer at issue. *See Scales v. Slater*, 181 F.3d 703, 709 n. 5 (5th Cir. 1999); *Garcia v. BRK Brands, Inc.*, 266 F.Supp.2d 566, 578 n. 17 (S.D.Tex.2003); *Edwards v. Texas–New Mexico Power Co.*, 259 F.Supp.2d 544, 547 (N.D.Tex.2003); *see also Stearman v. Comm'r of Internal*

*Revenue,* 436 F.3d 533, 537 (5th Cir.2006); *Bursztajn v. United States,* 367 F.3d 485, 491 (5th Cir.2004); *Yohey v. Collins,* 985 F.2d 222, 224–25 (5th Cir.1993); *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991). Hence, dismissal of these claims is warranted.

### D. *Joint Venture*

Taylor asserts in its responsive brief that P.D.G. and Hypower agreed to perform obligations under the prime contract as joint venturers. The court, however, need not decide whether a joint venture existed between P.D.G. and Hypower in this situation. Assuming *arguendo* that P.D.G. and Hypower acted as joint venturers on the IAH project, the failure of Taylor's claims against P.D.G. forecloses the potential of Hypower being found liable to Taylor under any joint venture theory. Accordingly, Taylor cannot recover against Hypower without regard to whether a joint venture with P.D.G. existed.

### E. *Conversion*

Plaintiff alleges that Defendants converted money owed to Taylor for the labor, equipment, and materials it provided as part of its work on the IAH project. In the conclusion section of its summary judgment response, Taylor lists a cause of action for conversion in the Subsection A heading. Within this subsection, however, Plaintiff fails to articulate any argument relating to such a claim, thereby indicating it has abandoned any relief predicated upon the theory of conversion. *See Scales,* 181 F.3d at 709 n. 5; *Garcia,* 266 F.Supp.2d at 578 n. 17; *Edwards,* 259 F.Supp.2d at 547; *see also Stearman,* 436 F.3d at 537; *Bursztajn,* 367 F.3d at 491; *Yohey,* 985 F.2d at 224–25; *Friou,* 948 F.2d at 974. Even assuming Taylor properly preserved a cause of action for conversion in its responsive brief, such a claim cannot succeed.

"Under Texas law, conversion is the wrongful exercise of dominion and control over another's property in violation of the property owner's rights." *ITT Commercial Fin. Corp. v. Bank of the W.,* 166 F.3d 295, 305 (5th Cir.1999) (citing *Amarillo Nat'l Bank v. Komatsu Zenoah Am., Inc.,* 991 F.2d 273, 274 (5th Cir.1993); *Tripp Vill. Joint Venture v. MBank Lincoln Ctr., N.A.,* 774 S.W.2d 746, 750 (Tex. App.—Dallas 1989, writ denied)); *accord Mayo v. Hartford Life Ins. Co.,* 354 F.3d 400, 410 (5th Cir.2004); *Carson v. Dynegy, Inc.,* 344 F.3d 446, 456 (5th Cir.2003); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 211 n. 44 (Tex.2002); *Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex.1992). "Texas jurisprudence holds that money can be the subject of conversion, but only when it is in the form of specific chattel, such as old coins, or when 'the money is delivered to another party for safekeeping, the keeper claims no title, and the money is required and intended to be segregated, either substantially in the form in which it was received or as an intact fund.'" *Mitchell Energy Corp. v. Samson Res. Co.,* 80 F.3d 976, 984 (5th Cir.1996) (quoting *Dixon v. State,* 808 S.W.2d 721, 723 (Tex.App.—Austin 1991, writ dism'd w.o.j.)); *see Phippen v. Deere & Co.,* 965 S.W.2d 713, 724 (Tex.App.— Texarkana 1998, no pet.); *Newsome v. Charter Bank Colonial,* 940 S.W.2d 157, 161 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (citing *Estate of Townes v. Townes,* 867 S.W.2d 414, 419–20 (Tex. App.—Houston [14th Dist.] 1993, writ denied)); *Edlund v. Bounds,* 842 S.W.2d 719, 727 (Tex.App.—Dallas 1992, writ denied). "From its nature the title to money passes by delivery, and its identity is lost by being changed into other money or its equivalent in the methods ordinarily used in business for its safekeeping and transmission." *Story v. Palmer,* 284 S.W. 331, 332 (Tex.Civ.App.—El Paso 1926, no writ)

(citations omitted); *accord Graham v. Turner*, 472 S.W.2d 831, 839 (Tex.Civ. App.—Waco 1971, no writ). Thus, a cause of action for conversion fails when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute. *See Insurance Co. of N. Am. v. Hickman*, No. 05–99–01162–CV, 2000 WL 1207138, at *4 (Tex.App.—Dallas Aug.25, 2000, no pet.).

■ "It is well settled that money can be a subject of conversion only if it can be described or identified as a specific chattel, but not where an indebtedness can be discharged by a payment of money generally." *Bobby Smith Brokerage, Inc. v. Bones*, 741 S.W.2d 621, 623 (Tex.App.— Fort Worth 1987, no writ); *accord Mitchell Energy Corp.*, 80 F.3d at 984; *Phippen*, 965 S.W.2d at 724. " 'When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate.' " *Edlund*, 842 S.W.2d at 727 (quoting *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex.App.— Dallas 1988, writ denied)); *accord Bobby Smith Brokerage, Inc.*, 741 S.W.2d at 623; *see Gronberg v. York*, 568 S.W.2d 139, 144– 45 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.) (denying recovery on theory of conversion when plaintiff alleged funds were wrongfully withheld from his commissions due under employment contract because plaintiff did not seek return of specific money but was only seeking repayment of money generally).

■ Plaintiff, in this case, seeks relief from Defendants for the alleged conversion of $99,947.88, which is the total amount of money invoices # 1588, # 1699, and # 1742 show as being due. Taylor, however, has adduced no evidence of an agreement between Taylor and P.D.G. or Hypower which required Taylor's eventual compensation to be kept segregated or maintained in any particular form. *See*

*Phippen*, 965 S.W.2d at 724. Rather, Taylor's contract with DRB states "[n]othing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor or Subcontractor . . . ." Moreover, unlike funds represented by a settlement check or captured by a writ of garnishment, the sum of money at issue in this case cannot be described or identified as a specific chattel. *See Newsome*, 940 S.W.2d at 161; *Barraza v. Law Offices of Smith & Gopin*, 918 S.W.2d 608, 611 (Tex.App.—El Paso 1996, no writ). The $99,947.88 in dispute is properly characterized as an alleged amount of indebtedness capable of being discharged by the payment of money generally. *See Rente Co. v. Truckers Express, Inc.*, 116 S.W.3d 326, 332 (Tex.App.— Houston [14th Dist.] 2003, no pet.). Accordingly, Taylor's claim for conversion must fail as a matter of law. *See id.*

■ Even if the $99,947.88 constituted a specific chattel, Plaintiff's claim still cannot succeed. Conversion involves the taking of property without the owner's consent. *See Mack v. Newton*, 737 F.2d 1343, 1354 (5th Cir.1984); *Bernstein v. Portland Sav. & Loan Ass'n*, 850 S.W.2d 694, 711 (Tex.App.—Corpus Christi 1993, writ denied). Hence, if the property owner expressly or impliedly assented to the taking or disposition of the property, the owner may not maintain a claim for conversion. *See Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1125 (5th Cir.1988); *Mack*, 737 F.2d at 1354; *Robinson v. National Autotech, Inc.*, 117 S.W.3d 37, 39–40 (Tex. App.—Dallas 2003, pet. denied); *Conlee Seed Co. v. Brandvik*, 526 S.W.2d 795, 798 (Tex.Civ.App.—Amarillo 1975, no writ).

■ Here, Taylor agreed to a payment plan pursuant to which P.D.G. would compensate DRB, and DRB would, in turn, pay Plaintiff. J. Taylor described the arrangement at his deposition:

Q: [W]henever you turn in your time, you turn it in to Directional Road Boring, right?

A: That's right.

Q: And then Directional Road Boring turns it in to the prime contractor; and then the prime contractor is supposed to pay Directional Road Boring, right?

A: That's right.

Q: And then Directional Road Boring is supposed to pay you?

A: That's right.

Q: And that was the agreement that you entered into on this project?

A: Yes, sir.

At another point in his deposition, J. Taylor confirmed the payment plan for the IAH project:

Q: You consented for PDG to pay Directional Road Boring, who was then supposed to turn around and pay you, true?

A: Yes, sir.

As highlighted by this deposition testimony, Plaintiff consented to a payment system that gave P.D.G. the authority to dispose of funds through DRB and provided for Taylor to receive its compensation from DRB. By assenting to this method of payment, Taylor is precluded from asserting that P.D.G.'s disposition of the funds was wrongful. *See Pan E. Exploration Co.*, 855 F.2d at 1125. Thus, Plaintiff is barred from pursuing a conversion claim against Defendants. *See Mack,* 737 F.2d at 1354.

F. *Breach of Contract*

 Taylor asserts that P.D.G. and Hypower owed it contractual and common law duties and acted negligently in breaching one or more of these duties. A party's actions or omissions may result in a breach of duties arising in tort, in contract, or simultaneously in both. *See Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618

(Tex.1986); *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.,* 176 S.W.3d 595, 613 (Tex.App.—Corpus Christi 2005, pet. denied); *OXY USA, Inc. v. Cook,* 127 S.W.3d 16, 20 (Tex.App.—Tyler 2003, pet. denied). The Texas Supreme Court has explained that "actions in contract and in tort are to be distinguished in that an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law." *International Printing Pressmen & Assistants' Union of N. Am. v. Smith,* 145 Tex. 399, 198 S.W.2d 729, 735 (1946); *accord Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 45 (Tex.1998); *UMLIC VP LLC,* 176 S.W.3d at 613; *OXY USA, Inc.,* 127 S.W.3d at 20. "If a party must rely on the duties created in the contract, or if the negligence claim alleges the breach of the very duties encompassed in a contract, the action is in substance an action on the contract." *UMLIC VP LLC,* 176 S.W.3d at 613; *see Bass v. City of Dallas,* 34 S.W.3d 1, 9 (Tex.App.—Amarillo 2000, no pet.); *CBI NA–CON, Inc. v. UOP Inc.,* 961 S.W.2d 336, 340 (Tex.App.—Houston [1st Dist.] 1997, pet. denied).

In this action, Taylor alleges that Defendants breached a contractual duty owed to it under the prime contract, teaming agreement, and/or the addendum when read in conjunction with the sub-subcontract. Notably, in its first amended petition, Taylor does not assert a cause of action for breach of contract against P.D.G. or Hypower. Taylor attempts to circumvent its failure to include a breach of contract claim by simply recasting the argument as part of its negligence theory. The absence of a breach of contract claim, however, is consistent with the fact that neither P.D.G. nor Hypower participated in any negotiations with representatives from Taylor, signed the DRB–Taylor sub-

subcontractual agreement, or entered into a separate signed, written contract with Taylor.

Nevertheless, Plaintiff seeks to create a contractual relationship between itself and Defendants by weaving together various provisions of the prime contract, teaming agreement, addendum, and sub-subcontract. Such attempts are futile in light of provision 1.3 found in the sub-subcontract agreement, which reads: "[t]he Subcontract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and the Subcontractor, (2) between the Owner and the Subcontractor, or (3) between any persons or entities other than the Contractor and Subcontractor." The first page of the sub-subcontract names DRB as the Contractor and Taylor as the Subcontractor. Moreover, in discussing the documents incorporated by reference, the sub-subcontract specifies in provision 2.1 that "[w]here a provision of such documents is inconsistent with a provision of this Agreement [the sub-subcontract], this agreement shall govern." Hence, it is apparent that the sub-subcontract was not intended to create a contractual relationship between anyone other than DRB and Taylor, and the sub-subcontractual agreement governs to the extent it is inconsistent with the other documents. Therefore, Plaintiff's argument that the prime contract, teaming agreement, and/or the addendum work in tandem with the sub-subcontract provisions to create a contractual duty owed by P.D.G. and Hypower to Taylor must fail, as does any negligence claim based on such an alleged contractual duty.

■ Taylor's effort to create a contractual duty by arguing it is the third-party beneficiary of the prime contract between the City of Houston and P.D.G. is equally lacking in merit. A third party may recover for breach of contract only if the contracting parties intended the contract to be for its benefit. *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999); *Bass*, 34 S.W.3d at 7; *Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 543 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (citing *Loyd v. ECO Res.*, 956 S.W.2d 110, 134 (Tex.App.—Houston [14th Dist.] 1997, no pet.)). Courts will not create a third-party beneficiary contract by implication. *See MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Union Pac. R.R. Co. v. Novus Int'l, Inc.*, 113 S.W.3d 418, 422 (Tex.App.—Houston [1st Dist.] 2003, pet. denied); *Bass*, 34 S.W.3d at 7. "In determining intent, courts presume that the parties contracted only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out." *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex.App.—Fort Worth 1992, no writ); *see MCI Telecomms. Corp.*, 995 S.W.2d at 651; *Bass*, 34 S.W.3d at 7–8; *Esquivel*, 992 S.W.2d at 543; *Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 795 (Tex.App.—Fort Worth 1996, no writ) (citing *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex.1975)). Moreover, "any doubts are resolved against a finding of the existence of a third-party beneficiary contract." *Bass*, 34 S.W.3d at 8; *Esquivel*, 992 S.W.2d at 543.

■ As evidence of its assertion that the parties intended the prime contract to benefit Taylor, Plaintiff points solely to PDG/TP 008017 (Exhibit E–33), with the following provision marked:

15.5 If Contractor or Subcontractor fails to pay any laborer or mechanic employed or working on the site of the work any of the wages required by this contract, City may, after written notice to Contractor, take such action as may be necessary to cause the suspension of

any further payment or advance of funds until the violations cease.

While the court questions whether Taylor qualifies as a laborer or mechanic for purposes of this provision, also detrimental to Plaintiff's argument is the fact that there is no reference to Taylor in provision 15.5 or in any other provision on the page, for that matter. *See Union Pac. R.R. Co.,* 113 S.W.3d at 422–23. For some unknown reason, Taylor chose not to include the complete prime contract or cite to additional pages in support of its argument that Plaintiff was a third-party beneficiary of the prime contract. Accordingly, the court is limited in its review to the evidence relied upon by Taylor in making its argument. As no obligation to benefit Taylor is "clearly and fully spelled out" in the excerpt of the agreement between the City of Houston and P.D.G., Plaintiff's attempt to cast itself as a third-party beneficiary of the prime contract cannot succeed. *See MCI Telecomms. Corp.,* 995 S.W.2d at 651; *Corpus Christi Bank & Trust,* 525 S.W.2d at 503–04; *Bass,* 34 S.W.3d at 7–8; *Brunswick Corp.,* 829 S.W.2d at 354.

Because Taylor did not assert a breach of contract claim against either P.D.G. or Hypower, cannot establish the existence of a contractual relationship with either P.D.G. or Hypower, and does not qualify as a third-party beneficiary of the prime contract, Plaintiff's claim that Defendants breached a contractual duty must be rejected.

### G. *Negligence*

■ According to Plaintiff, P.D.G. and Hypower also breached duties owed to Taylor that are based on generally accepted, construction industry standards. Under Texas law, a negligence claim consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury. *See Boudreaux,* 402 F.3d at 540–41; *Anthony v. Chevron USA, Inc.,* 284 F.3d 578, 583 (5th Cir.2002); *Ford v. Cimarron Ins. Co.,* 230 F.3d 828, 830 (5th Cir.2000); *Gutierrez v. Excel Corp.,* 106 F.3d 683, 687 (5th Cir.1997); *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 663 (Tex.1999); *Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex.1999); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). The first inquiry addressed in all negligence cases is whether a duty was owed to the plaintiff by the defendant. *See Boudreaux,* 402 F.3d at 541; *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 729 (5th Cir.2002); *Ford,* 230 F.3d at 830; *Rodriguez v. Sabatino,* 120 F.3d 589, 591–92 (5th Cir.1997), *cert. denied,* 523 U.S. 1072, 118 S.Ct. 1511, 140 L.Ed.2d 665 (1998); *Mellon Mortgage Co.,* 5 S.W.3d at 663; *Thapar,* 994 S.W.2d at 637. The court will limit its analysis to the duty issue, as it is dispositive.

In a negligence action, "[w]hether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question." *Id.* (citing *St. John v. Pope,* 901 S.W.2d 420, 424 (Tex.1995); *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994)); *see Boudreaux,* 402 F.3d at 541; *Calbillo,* 288 F.3d at 729; *Ford,* 230 F.3d at 830. If the defendant owed no duty, it cannot be found liable for negligence. *See Boudreaux,* 402 F.3d at 542 n. 19; *Thapar,* 994 S.W.2d at 637 (citing *Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.), *cert. denied,* 525 U.S. 1019, 119 S.Ct. 546, 142 L.Ed.2d 454 (1998); *St. John,* 901 S.W.2d at 424; *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993)). "A duty is a legally enforceable obligation to conform to a particular standard of conduct." *San Benito Bank & Trust Co. v. Landair Travels,* 31 S.W.3d 312, 317 (Tex. App.—Corpus Christi 2000, no pet.); *accord Fitzpatrick v. Copeland,* 80 S.W.3d 297, 302 (Tex.App.—Fort Worth 2002, pet.

denied); *Rodriguez v. Moerbe*, 963 S.W.2d 808, 816 (Tex.App.—San Antonio 1998, pet. denied). In assessing the existence of a duty, the court considers " 'several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant.' " *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 544 (Tex.1998) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990)); *accord Boudreaux*, 402 F.3d at 541 n. 16; *Calbillo*, 288 F.3d at 729; *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983); *Allen v. Albright*, 43 S.W.3d 643, 646 (Tex. App.—Texarkana 2001, no pet.). Of these factors, foreseeability of the risk is the dominant consideration. *See Boudreaux*, 402 F.3d at 541; *Greater Houston Transp. Co.*, 801 S.W.2d at 525; *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Amaya v. Potter*, 94 S.W.3d 856, 861 (Tex. App.—Eastland 2002, pet. denied); *Allen*, 43 S.W.3d at 646.

■■■ Taylor contends that P.D.G. and Hypower had a duty to ensure that downstream subcontractors were paid for their work on the IAH project. For purposes of the instant action, Plaintiff alleges this duty involved: (1) obtaining affidavits from DRB that its bills, materialmen, and subcontractors had been or would be paid and that sufficient money would be withheld as retainage before issuing its final payment to DRB and (2) withholding payments to DRB or issuing joint checks to DRB and Taylor once Defendants received notice that Taylor was not being paid. Because Plaintiff's theory of common law duties is based upon expert testimony that the court has deemed inadmissible, Defendants' alleged obligations must derive from another source. While the State of Texas recognizes a duty which obligates general contractors " 'to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort as well as a breach of the contract,' " neither P.D.G. nor Hypower agreed to act for the benefit of Taylor. *Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 336 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.) (quoting *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947)). Notably, P.D.G. and Hypower did not sign the DRB–Taylor sub-subcontract, execute a separate agreement with Taylor, intend for Taylor to be a third-party beneficiary of the prime contract, or negotiate with representatives of Taylor. Accordingly, the absence of any contractual relationship between Defendants and Plaintiff precludes the duty of general contractors recognized in *Barnhill* from applying in the instant case. *See* 639 S.W.2d at 336.

Moreover, in considering the risk, foreseeability, and likelihood of injury to Plaintiff weighed against the social utility of the actors' conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on Defendants, the court determines that, as a matter of policy, the duties alleged by Taylor should not be imposed on Defendants. *See Edward D. Jones & Co.*, 975 S.W.2d at 544; *accord Boudreaux*, 402 F.3d at 541 n. 16; *Calbillo*, 288 F.3d at 729; *Otis Eng'g Corp.*, 668 S.W.2d at 309; *Allen*, 43 S.W.3d at 646. The significant expenditures of time and money that would result from the imposition of Plaintiff's proposed duties would create an undue burden for Defendants, especially in light of the contractual and statutory avenues of relief already available to downstream contractors seeking payment. Accordingly, Taylor's negligence claim must fail.

## H. *Quantum Meruit*

 Taylor also seeks recovery under the theory of *quantum meruit*, arguing that it provided labor, equipment, and materials to P.D.G. and Hypower, which were beneficial to them and which they knowingly and willingly accepted without recompense to Taylor. Under Texas law, "[q]uantum meruit is an equitable theory which permits a 'right to recover ... based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 462 (5th Cir.2003) (quoting *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex.1976)); *see Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990); *Gibson v. Bostick Roofing & Sheet Metal Co.*, 148 S.W.3d 482, 489 (Tex.App.—El Paso 2004, no pet.); *Herbst v. Sheppard*, 995 S.W.2d 310, 315 (Tex.App.—Corpus Christi 1999, pet. denied). In general, a party may recover under the doctrine of *quantum meruit "only* in the absence of an express contract covering the services or materials furnished." *Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 401 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (emphasis in original); *see Leasehold Expense Recovery, Inc.*, 331 F.3d at 462; *Vortt Exploration Co.*, 787 S.W.2d at 944; *Tully v. Citibank (S.D.), N.A.*, 173 S.W.3d 212, 216 (Tex.App.—Texarkana 2005, no pet.). "When there exists a valid express contract covering the subject matter, there can be no implied contract." *Oliver v. Rogers*, 976 S.W.2d 792, 807 (Tex.App.— Houston [1st Dist.] 1998, pet. denied); *see Black Lake Pipe Line Co.*, 538 S.W.2d at 86; *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex.1964). "However, the existence of an express contract does not preclude recovery in quantum meruit for the reasonable value of services rendered and accepted which are not covered by the contract." *Black Lake Pipe Line*

*Co.*, 538 S.W.2d at 86. Nevertheless, recovery is limited to situations in which non-payment for the services rendered would result in unjust enrichment to the party benefitting from the work. *See Vortt Exploration Co.*, 787 S.W.2d at 944; *Gibson*, 148 S.W.3d at 489.

 Acknowledging that *quantum meruit* is founded on unjust enrichment, to recover under this theory, a plaintiff must prove the following elements: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Exploration Co.*, 787 S.W.2d at 944; *see Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex.1985); *Tully*, 173 S.W.3d at 216; *Gibson*, 148 S.W.3d at 489–90; *Herbst*, 995 S.W.2d at 315. The plaintiff pursuing a *quantum meruit* action "must show that his efforts were undertaken *for* the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Gibson*, 148 S.W.3d at 489 (emphasis in original); *accord Truly v. Austin*, 744 S.W.2d 934, 937 (Tex.1988); *Economy Forms Corp. v. Williams Bros. Constr. Co.*, 754 S.W.2d 451, 459 (Tex.App.—Houston [14th Dist.] 1988, no writ).

 In the case at bar, it is uncontroverted that Taylor supplied labor, equipment, and materials on the IAH project as a result of an agreement it entered into with DRB. Taylor negotiated with DRB, contracted with DRB, expected payment from DRB, and had only limited contact with P.D.G. and Hypower. *See Gibson*, 148 S.W.3d at 490. While Defendants may

have received some benefit from Taylor's work on the project, it is clear that Taylor's actions were undertaken in fulfillment of its contractual commitment to DRB. The mere fact that Defendants possibly benefitted from Plaintiff's efforts is not enough to sustain a *quantum meruit* claim. *See Gibson,* 148 S.W.3d at 489; *accord Truly,* 744 S.W.2d at 937; *Economy Forms Corp.,* 754 S.W.2d at 459. Consequently, there is no evidence that Taylor completed the work *for* P.D.G. or Hypower. *See Gibson,* 148 S.W.3d at 490.

Furthermore, P.D.G. and Hypower did not receive reasonable notification that Taylor expected payment from them for the labor, equipment, and materials Taylor furnished on the IAH project. During his deposition, J. Taylor testified:

Q: You had no expectation of payment for your services to come from anybody other than Directional Road Boring; is that true?

A: When I started the job, yes, sir.

J. Taylor's lack of expectation comports with the fact that Plaintiff did not negotiate or contract with either Defendant. As for the alleged conversations between Taylor and representatives of P.D.G. and Hypower regarding DRB's failure to pay, these discussions took place shortly before Taylor walked off the job, at the earliest, and were limited to inquiries as to when P.D.G. was going to pay DRB so that DRB could pay Taylor. Ms. Taylor conceded at deposition:

Q: When you were complaining—or when you were allegedly complaining that you hadn't been paid in this case, what you were wanting to have happen is, you were wanting for DRB to be paid so that you could, in turn, be paid by them.

A: Right.

Q: Is that what you were wanting?

A: Yes.

Moreover, both J. Taylor and Ms. Taylor agree that Taylor never provided any written notice to P.D.G. or Hypower informing them that it had not been paid and was seeking payment from them. J. Taylor admitted at deposition:

Q: Did you ever send a letter to PDG or Hypower?

A: No, sir.

Q: So, we can agree that there was never any written correspondence sent from Taylor Pipeline to PDG or Hypower that they were not getting paid on this contract, true?

A: Written correspondence, probably not.

Ms. Taylor confirmed:

Q: Other than the statements and invoices that you sent to Directional Road Boring, did you send any written correspondence to anyone else that you weren't getting paid?

A: No.

Because Plaintiff had no contractual agreement with either Defendant, did not initially expect payment from either party, and did not later provide either Defendant with a written request for payment, the court is unable to conclude that Taylor completed the work *for* P.D.G. or Hypower or that P.D.G. or Hypower received reasonable notification that Taylor expected compensation from either company for the labor, equipment, and materials it provided on the project. Therefore, Taylor's *quantum meruit* claim is without merit.

### I. *Misapplication of Trust Funds*

 Taylor further argues that P.D.G. and Hypower violated the Construction Trust Fund Act ("Trust Fund Act") found in Chapter 162 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 162.001 *et seq.* The Trust Fund Act "imposes fiduciary responsibilities on con-

tractors to ensure that subcontractors, mechanics and materialmen are paid for work completed." *In re Waterpoint Int'l LLC,* 330 F.3d 339, 345 (5th Cir.2003); *accord Fidelity & Guar. Ins. Underwriters, Inc. v. Wells Fargo Bank, N.A.,* No. Civ. A. H–04–2833, 2006 WL 870683, at *9 (S.D.Tex. Mar.31, 2006). This provision was "enacted to serve as a special protection for subcontractors and materialmen in situations where contractors or their assignees refused to pay the subcontractor or materialman for labor and materials." *In re Waterpoint Int'l LLC,* 330 F.3d at 345; *see McCoy v. Nelson Utils. Servs., Inc.,* 736 S.W.2d 160, 164 (Tex.App.—Tyler 1987, writ ref'd n.r.e.).

Accordingly, construction payments constitute trust funds under Chapter 162 of the Texas Property Code if they are "made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." Tex. Prop. Code Ann. § 162.001 (Vernon 1995 & Supp.2005); *accord Argyle Mech., Inc. v. Unigus Steel, Inc.,* 156 S.W.3d 685, 687 (Tex.App.—Dallas 2005, no pet.); *Holladay v. CW & A, Inc.,* 60 S.W.3d 243, 246 (Tex.App.—Corpus Christi 2001, pet. denied). In such a situation, the "contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds" serves as trustee. Tex. Prop. Code Ann. § 162.002 (Vernon 1995); *accord C & G, Inc. v. Jones,* 165 S.W.3d 450, 453 (Tex. App.—Dallas 2005, pet. denied); *Holladay,* 60 S.W.3d at 246. The artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or furnishes labor or material for the construction or repair of an improvement on specific real property located in Texas is the beneficiary of any trust funds paid or received in connection with the improvement. *See* Tex. Prop.

Code Ann. § 162.003 (Vernon 1995 & Supp. 2005); *accord In re Waterpoint Int'l LLC,* 330 F.3d at 345.

Pursuant to the Trust Fund Act, "[any] trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds." Tex. Prop. Code Ann. § 162.031(a) (Vernon 1995); *accord C & G, Inc.,* 165 S.W.3d at 453; *Argyle Mech., Inc.,* 156 S.W.3d at 687; *Holladay,* 60 S.W.3d at 245–46. Trustees, however, are provided with an affirmative defense under the Trust Fund Act. Namely, a trustee can avoid liability for misapplication of trust funds by showing "the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement." Tex. Prop. Code Ann. § 162.031(b); *accord Holladay,* 60 S.W.3d at 247; *Lively v. Carpet Servs., Inc.,* 904 S.W.2d 868, 875 (Tex. App.—Houston [1st Dist.] 1995, writ denied). "The law interpreting section 162.031(b) does not require … an explicit level of proof tying particular expenditures to the improvements at issue." *Holladay,* 60 S.W.3d at 248. Rather, construction trust funds may be applied to overhead costs as well as other "directly related" expenses. *See In re Nicholas,* 956 F.2d 110, 113 (5th Cir.1992); *In re Boyle,* 819 F.2d 583, 586 (5th Cir.1987); *Holladay,* 60 S.W.3d at 248; *Lively,* 904 S.W.2d at 875–76; *see also* Op. Tex. Att'y Gen. No. JM–945 (1988) (affirmative defense allows paying funds for overhead and other expenses, even if not readily traceable to a particular job, so long as actually incurred).

█ The parties in this case disagree as to whether the Trust Fund Act contem-

plates those situations in which a sub-subcontractor seeks relief from the general contractor based on the subcontractor's failure to pay. P.D.G. essentially asks the court to read a privity requirement into the Trust Fund Act whereby a sub-subcontractor's remedy lies only against the subcontractor who incurred a contractual obligation to pay the sub-subcontractor. Plaintiff, on the other hand, argues that a contractor holds funds in trust for all downstream contractors, including the subcontractors of the contractor's subcontractor. For purposes of the instant action, the court need not address this issue because even assuming *arguendo* that P.D.G. held funds in trust for Taylor as a result of Taylor's work on the IAH project, P.D.G. may still rely on the affirmative defense found in Section 162.031(b). In order to avoid liability, P.D.G. need only show that any funds not paid directly to Taylor were used by P.D.G. to pay its overhead costs or actual expenses directly related to the construction or repair of the improvement. *See In re Nicholas,* 956 F.2d at 113; *In re Boyle,* 819 F.2d at 586; *Holladay,* 60 S.W.3d at 248; *Lively,* 904 S.W.2d at 875–76; *see also* Op. Tex. Att'y Gen. No. JM–945 (1988).

Here, it is undisputed that P.D.G. used the funds it received from the City of Houston to compensate DRB for its work on the IAH project, as confirmed by J. Taylor's deposition testimony:

Q: And it's your—it's your belief and your understanding in this case that PDG fully paid Directional Road Boring, true?

A: Yes, sir.

In fact, the payment plan agreed to by Taylor required P.D.G. to pay DRB in order for DRB to compensate Taylor. Because P.D.G. used the payments it received from the City of Houston pursuant to the prime contract to compensate its subcontractor DRB for work on the IAH

project, and payment of a subcontractor by a general contractor for work it performed qualifies as an "actual expense directly related" to the construction of an improvement to real property, Taylor's claim against P.D.G. for misapplication of trust funds cannot survive.

■■■ Any claim against Hypower, in its individual capacity, under the Trust Fund Act must also fail because there is no evidence suggesting that Hypower ever received funds to be held for the benefit of Taylor. Taylor's contract was with DRB, and DRB's contract was with P.D.G. Hypower never signed any agreement with either DRB or Taylor, and accordingly, it never received any funds to be held for the benefit of either party. Therefore, Plaintiff cannot prevail on its Trust Fund Act claim against either Defendant.

### J. *Statutory Prompt Pay*

■■■ In its response to Defendants' motions for summary judgment, Plaintiff argues that Defendants violated the Prompt Pay to Contractors and Subcontractors Act ("Prompt Pay Act") by failing to compensate Taylor for the labor, equipment, and materials it provided on the IAH project. Under the Prompt Pay Act, a contractor who receives a payment in connection with a contract to improve real property must pay each of its subcontractors the portion of the owner's payment, including interest, that is attributable to work properly performed as provided under the contract by the subcontractor, to the extent of that subcontractor's interest in the owner's payment, not later than the seventh day after the owner receives the owner's payment. *See* Tex. Prop. Code Ann. § 28.002(b) (Vernon 2000). Taylor fails to recognize, however, that for purposes of Chapter 28 of the Texas Property Code, an owner is a "person or entity, *other than a governmental entity,* with an

interest in real property that is improved, for whom an improvement is made, and who ordered the improvement to be made." *Id.* at § 28.001(4) (emphasis added). The construction project at issue in this case involved improvements made to Runway 8L–26R New North Vault and Security Fence at IAH pursuant to a prime contract entered into between the City of Houston, as owner, and P.D.G., as general contractor. Accordingly, by virtue of its status as a governmental entity, the City of Houston is precluded from being an owner under the Prompt Pay Act. Thus, because Section 28.002(b) requires the contractor to receive payment from an owner and the City of Houston is not an owner under the statute, any funds P.D.G. and/or Hypower received from the City and the parties' treatment of those funds do not fall within the purview of this Act. *See id.* at §§ 28.001(4), 28.002(b).

Moreover, even if the court were to overlook this basic deficiency plaguing Plaintiff's argument, the fact remains that subsection (c), not subsection (b), of Section 28.002 governs the prompt payment of funds to a sub-subcontractor like Taylor. Subsection (b) outlines the process by which a contractor pays its subcontractors upon receipt of compensation from the owner of the project. *See id.* at § 28.002(b). Subsection (c), on the other hand, addresses those situations in which a subcontractor executes its own subcontractual agreement(s) as part of the construction project:

> [a] subcontractor who receives a payment under Subsection (b) or otherwise from a contractor in connection with a contract to improve real property shall pay each of its subcontractors the portion of the payment, including interest, if any, that is attributable to work properly performed or materials suitably stored or specially fabricated as provided under the contract by that subcontractor, to the extent of that subcon-

tractor's interest in the payment. The payment required by this subsection must be made not later than the seventh day after the date the subcontractor receives the contractor's payment. *Id.* at § 28.002(c). This provision clearly contemplates a subcontractor, not a general contractor, being responsible for ensuring that the sub-subcontractors with whom it contracted receive payment for their work on the construction project. In sum, while subsection (b) arguably governs Defendants' responsibility to compensate DRB for the work it performed in accordance with the P.D.G.-DRB subcontract, subsection (c) addresses DRB's obligation to pay Taylor under the DRB–Taylor sub-subcontract. Because the Prompt Pay Act does not contain provisions directing the timely payment of funds from a contractor to a sub-subcontractor and does not cover situations in which a governmental entity is involved, Plaintiff is unable to recover from Defendants under this statute.

### III. *Conclusion*

Accordingly, P.D.G. and Hypower's Motions for Summary Judgment are GRANTED. Taylor fails to present a claim that warrants relief.

Plaintiff's claims for fraud and sworn account are deemed abandoned because Taylor did not address either cause of action in its response to Defendants' motions for summary judgment. Its conversion claim fails in light of the fact that Plaintiff consented to the payment plan governing the distribution of funds and the $99,947.88 at issue does not constitute a specific chattel but, rather, is indebtedness that can be discharged by the payment of money generally. Moreover, Taylor's cause of action for negligence cannot succeed because it is unable to show that P.D.G. or Hypower breached duties created by contract or common law. The sub-subcontract agreement was not intended to

create a contractual relationship between any parties other than DRB and Taylor, and the prime contract does not clearly and fully spell out any obligation to benefit Taylor. Furthermore, Taylor's inability to overcome the exclusion of Neild's expert testimony in order to establish the existence of P.D.G. and Hypower's alleged duties is a bar to its negligence claim. Because Taylor has not shown that it performed the work *for* P.D.G. or Hypower or that P.D.G. or Hypower received reasonable notification that Taylor expected payment from them for the labor, equipment, and materials it furnished on the IAH project, Plaintiff cannot sustain a claim for *quantum meruit.* As for liability under the Trust Fund Act, Taylor's cause of action fails based on P.D.G.'s entitlement to the affirmative defense set forth in the Act. Any attempt by Plaintiff to recover under the Prompt Pay Act cannot survive because the City of Houston does not qualify as an owner under the Act and the Act does not create any obligation for a contractor to pay the subcontractor of a subcontractor.

In sum, there remain no material facts in dispute, and P.D.G. and Hypower are entitled to judgment as a matter of law.